**Harry BIRD and Edna Bird (Plaintiffs), Respondents,**

v.

**JOHN HANCOCK MUTUAL LIFE INSURANCE COMPANY, a Corporation (Defendant), Appellant.**

No. 30167.

St. Louis Court of Appeals.

Missouri.

Feb. 17, 1959.

Motion for Rehearing or for Transfer to Supreme Court Denied March 13, 1959.

Cobbs, Armstrong, Teasdale & Roos, Kenneth Teasdale, Walter M. Clark, St. Louis, for appellant.

Charles J. Malloy, St. Louis, for respondents.

HOUSER, Commissioner.

This is a suit on a life insurance policy. Tried before a jury in the Circuit Court of the City of St. Louis, judgment was rendered for plaintiff for $1,000, the face amount of the policy. The insurance company has appealed.

On February 6, 1956, one month after he was paroled from Missouri State Penitentiary, Frank Bird applied for and effective that date appellant issued a policy in the sum of $1,000, insuring the life of the applicant. Insured was not asked about any previous felony conviction when he made application, nor did he disclose his criminal record. Neither the application nor the policy required the giving of such information. The policy contained a provision that no statement made by the insured "shall be used in defense to a claim hereunder unless it is contained in a written application and a copy of such application is attached to this policy when issued." The policy contained no provision excluding liability for the payment of the face value of the policy if the death of the insured resulted from a violation of law. The policy did contain a provision for double indemnity for accidental death of the insured. In the double indemnity provision there was a clause specifically excluding liability for the payment of the additional benefit if the death of the insured "results, directly or indirectly, or wholly or partially, * * * from committing an assault or a felony."

On April 15, 1956 the insured, while armed, attempted to hold up a cocktail lounge, in complete disregard of the lives and safety of himself and others. During the holdup he threatened the life of a police officer who was present at the lounge, attempted to take the life of the officer and inflicted serious injuries upon a woman lawfully on the premises. The officer, acting in the line of duty, shot and killed the insured. The beneficiaries of the policy, brother and sister-in-law of the deceased, gave due notice, made proper proofs of death and made claim for the face amount, but made no claim under the double indemnity provisions of the policy. Appellant declined payment and upon the filing of suit appellant affirmatively pleaded in its answer

that payment of the face amount of a policy where the insured is killed while in the commission of a felony and where the insured thus voluntarily exposes his life to danger, "would be against the public policy of this State."

A single question is presented for decision: Should the courts refuse, on grounds of public policy, to enforce a life insurance policy payable to innocent beneficiaries, where the insured meets his death as a direct result of a criminal act in the commission of a violent felony (armed robbery), in the absence of a policy provision excluding liability under such circumstances and in the absence of a showing that the deceased procured the issuance of the policy in contemplation of risking his life in the commission of a felony?

There is a wide and decisive split of authority on this question. 45 C.J.S. Insurance § 847; 29 Am.Jur., Insurance, § 906; Annotations: 68 A.L.R. 167; 23 A.L.R.2d 1105. The reason given by the courts which refuse to enforce life insurance contracts under such circumstances is that to permit recovery would tend to induce and encourage the commission of crime by protecting the criminal from some of the consequences which society imposes. This reasoning was adverted to in two decisions of this court. In Berne v. Prudential Ins. Co. of America, 235 Mo.App. 178, 129 S.W.2d 92, the beneficiary sought to enforce two life insurance policies containing provisions for double indemnity in case of death resulting from bodily injuries sustained through external, violent and accidental means. There was no provision excluding coverage if the death of the insured occurred in connection with a violation of law. Uncontradicted evidence showed that insured was shot and killed by a watchman while making a threatening movement toward the watchman as insured was in the act of committing a burglary and larceny. This court, affirming the action of the trial court granting the insurance company a new trial, held that the death of the insured was not an "accidental" death within the meaning of the policy because insured voluntarily entered upon the commission of the crime, thereby assuming the risk of being killed if he should be discovered and attempt to resist, and that the killing of the insured under such circumstances could not have been in the contemplation of either of the parties as constituting death by accidental means. The opinion ventured the further suggestion that a contract provision agreeing to pay an additional benefit for the death of the insured arising out of the commission of a felony (there was no such provision in the contract in question) would be against public policy and unenforceable as tending to induce the commission of crime, and that plaintiff could not recover in that case, the evidence unequivocally showing that insured's death occurred while he was committing a felony. In Winter v. Metropolitan Life Ins. Co., Mo.App., 129 S.W.2d 99, loc. cit. 104, this court said:

> "It would, of course, be clearly against public policy * * * to permit a recovery by a beneficiary as for accidental death of the insured if the evidence left no room for reasonable controversy and showed conclusively and without any dispute that the insured was shot while resisting police officers who were lawfully trying to arrest him in connection with a felony committed by him and of which they had knowledge and information sufficient to warrant his arrest; * * *."

In neither of these cases was the reference to public policy necessary to the making of the decision. It was merely dictum.

We find only one case in this state in which the precise question raised on this appeal has been squarely decided. In McDonald v. Order of Triple Alliance, 57 Mo.App. 87, the widow of the insured in a benevolent insurance policy was permitted to recover where insured met his

death in an attempt to commit a felony (murder and robbery), in the face of a plea that public policy barred recovery. As in the instant situation, the contract of insurance contained no clause exempting liability to pay the face amount if the insured met his death while violating the law. This court held that the mere fact that the insured exposed his life in violation of the laws did not affect the rights of the beneficiary to recover on the policy, *in the absence of a clause to that effect in the policy*. The court refused to imply such a clause "in the interest of good government," rejecting the public policy argument that to enforce such a contract would afford encouragement to crime.

On the instant appeal, where the question again is directly presented, we follow our former decision in McDonald, again rejecting the policy argument, and hold that the instant contract is not unenforceable upon grounds of public policy.

■ Looking to the contract, we cannot refuse enforcement on the ground that the contract itself is illegal. There is no suggestion that any specific provision in this policy is void or illegal. In standard and conventional terms the contract insures against the death of Frank Bird, the company agreeing to pay the face amount of the policy at "the death of the insured," subject to the conditions and provisions of the policy, none of which excludes death arising out of the commission of a felony. Death is the risk with respect to which the parties contracted. Human lives come to an end for countless reasons and upon myriads of contingencies. When an insurance company accepts an applicant as a risk and issues a policy insuring against his death it takes him as he is, with all of his human weaknesses and frailties, and protects him and his beneficiaries not only against risk of death arising from natural causes but also against the innumerable risks of death arising out of the possible consequences of human passions and failings. More than one hundred years ago the Supreme Court in Harper's Adm'r v.

Phoenix Ins. Co., 19 Mo. 506, loc. cit. 509, said:

> "In life policies * * * *unless it is otherwise stipulated,* the insurer takes the subject insured, with his flesh, blood and passions. The dangers to which the lives of men are exposed from sudden ebullitions of feeling, are a lawful matter of insurance." (Italics ours).

The same idea was expressed in Home State Life Ins. Co. v. Russell, 175 Okl. 492, 53 P.2d 562, loc. cit. 564:

> "Death is the thing really and actually insured against, human weaknesses and follies intervening nevertheless, and it is for protection against these very things, or their possible consequences, as well as for the result of disease or the certain termination of life from old age, for which the insured pays his premiums and the insurer computes and exacts them."

The possibility that an affirmance of the judgment will promote evil or cause any considerable number of insureds to commit depredations on the public because of the comforting reassurance that their beneficiaries will collect the insurance if they are killed in the commission of crime is remote, speculative and theoretical. Both the public and the insurer have "a guaranty against increasing the risk insured, by that love of life which nature has implanted in every creature." Harper's Adm'r v. Phoenix Ins. Co., supra, 19 Mo. loc. cit. 509. Furthermore, "It is fanciful to say that the cancellation of an insurance policy will restrain a man from crime. The law of the land, the machinery for its enforcement, and the restraints of conscience do this." Fields v. Metropolitan Life Ins. Co., 147 Tenn. 464, 249 S.W. 798, loc. cit. 801, 36 A.L.R. 1250. Whatever public detriment ensues may well be offset by the public benefit accruing in the protection of creditors, the safeguarding of commercial transactions, and the provison of dependent women and children with the material ne-

cessities of life,[1] resulting from a rule requiring life insurance companies to pay in accordance with the terms of their contracts when death occurs. But the balancing of these considerations is a matter peculiarly within the province of the General Assembly. There is no necessity, and it would be presumptuous, for the courts to make the law for which appellant contends by declaring a rule of public policy.

In considering the broad question of public policy we observe that it is the public policy of this state, declared by section 376.620 RSMo 1949, V.A.M.S. that in suits upon life insurance policies it is no defense that the insured committed suicide[2] and that policy stipulations to the contrary are void. The risk of death through the human weakness or folly of suicide is one of the risks which an insurer is required by law to take; it is intended that life insurance policies be paid upon the occurrence of death even though the death be caused by an intentional act of self-destruction by the insured. The instant holding, requiring that a life insurance policy be paid upon the occurrence of death even though the death be caused by an intentional act of the insured in exposing his life to the risk of extinction by engaging in violent criminality, is altogether consistent with the public policy evidenced by section 376.620, supra.

Appellant could have inserted a "violation of the law" exclusionary clause in its contract relating to the face amount of the policy, but omitted to do so. Without doubt the possibility of insured meeting his death in that fashion was within the contemplation of the parties at the time of the making of the contract, because such an exclusionary clause was included in the double indemnity provisions of the policy. There is no reason why this court should re-write the policy by inserting in the main body of the policy an exclusionary clause which appellant itself did not see fit to place there.

The Commissioner recommends that the judgment of the circuit court be affirmed.

PER CURIAM.

The foregoing opinion of HOUSER, C., is adopted as the opinion of the court.

The judgment of the circuit court is, accordingly, affirmed.

RUDDY, P. J., and WOLFE and ANDERSON, JJ., concur.

---

1. Weeks v. New York Life Ins. Co., 128 S.C. 223, 122 S.E. 586, loc. cit. 589, 35 A.L.R. 1482.

2. —unless it be shown that insured contemplated suicide at the time he applied for the policy—