Carol E. STOKLEY, Plaintiff,

v.

HARTFORD ACCIDENT AND INDEM-NITY COMPANY, and the Prudential Insurance Company of America, Defendants.

No. 17831.

United States District Court, W. D. Missouri, W. D.

Dec. 22, 1970.

Robert L. Shirkey, Kansas City, Mo., for plaintiff.

William J. Burrell, J. Nelson Happy, Dietrich, Davis, Burrell, Dicus & Rowlands, Kansas City, Mo., for Hartford Accident & Indemnity Co.

John C. Thurlo, Swanson, Midgley, Jones, Eager & Gangwere, Kansas City, Mo., for Prudential Ins. Co. of America.

MEMORANDUM AND OPINION GRANTING JUDGMENT IN FAVOR OF DEFENDANTS AND AGAINST PLAINTIFF

ELMO B. HUNTER, District Judge.

This is a diversity action which was originally commenced in the Circuit Court of Jackson County, Missouri, to

recover certain insurance proceeds under two policies issued by the defendant insurers. Plaintiff also seeks the recovery for alleged "vexatious delay" in the payment of such proceeds and for attorney fees. The cause was subsequently removed to this Court by defendants' petition for removal and was tried before the Court without jury. Jurisdiction is founded upon the provisions of 28 U.S.C. § 1332.

On January 6, 1968, Robert E. Stokley, then the husband of the plaintiff, was fatally shot by the proprietor of the Asian Arts Shop, a small retail establishment for imported art objects which was located near Towanda, Illinois. At the time of Stokley's death, two insurance policies issued by the defendant Prudential Insurance Company were in force, naming Stokley as the insured. Defendant Prudential Insurance Company has paid to the plaintiff, as named beneficiary of the policies, the "ordinary" life insurance benefits under the policies in the sum of $29,480.00. However, one of the policies, No. 31780890, also provided for benefits in the amount of $10,-000.00 for the insured's death as the result of "accidental bodily injury."[1] Also in force at the time of Stokley's death was a group indemnity policy issued by defendant Hartford Accident and Indemnity Company which similarly provided for benefits in the sum of $24,000.00 in the event of the death of Stokley, a dependent covered under the policy, by reason of "accidental bodily injury."[2] Plaintiff, as beneficiary of both these policies, seeks to recover the proceeds allegedly due under the accidental death provisions.

The basic question raised in this proceeding is whether the death of the insured, Robert E. Stokley, was the result of "accidental bodily injury" within the coverage of the policies issued by the defendants.[3] If there is no coverage under these policies, plaintiff is not, of course, entitled to recovery either for the benefits provided under the accidental death provisions or for "vexatious delay" in the payment of such proceeds.

The clear, cogent, and persuasive evidence to which plaintiff did not object during the trial of this cause shows that the insured was fatally shot by Richard H. Long, the proprietor of the Asian Arts Shop, while the insured was engaged in the commission of a felony[4] on the premises of the shop on the night of January 6, 1968. The testimony and evidence adduced at trial clearly reveals the following. On the afternoon of January 6, 1968, the insured first appeared in the Asian Arts Shop. The shop was located along a divided highway, but was relatively isolated from any town or other residential or commercial buildings. Upon entering the shop, Stokley inspected

1. The Prudential insurance policy reads, in relevant part, as follows:
   "Upon receipt at the Home Office of due proof that the Insured's death resulted, directly and independently of all other causes, from accidental bodily injury, the Company will, subject to the provisions of this policy, pay the amount of the Accidental Death Benefit specified in the Schedule of Supplementary Benefits * * *."

2. The pertinent provisions of the Hartford policy read:
   "The word 'injury' as used in this policy means accidental bodily injury sustained by an insured person or a covered dependent while this policy is in force with respect to such person and which results directly and independently of all other causes in loss covered by this policy."

3. It is the contention of the Prudential Insurance Company that plaintiff has not complied with the terms of the policy by her failure to make a demand upon it for payment of the accidental death benefits. In light of the ultimate findings herein, no discussion of this contention is necessary for the purposes of this opinion.

4. Under Illinois statutory law, a person commits burglary "when without authority he knowingly enters, or without authority remains within a building, * * * or any part thereof, with the intent to commit therein a felony or theft." Vol. 38, Illinois Annot.Stat. § 19–1(a). Such action constitutes a felony. Vol. 38 Illinois Annot.Stat. § 2–7. See also: Vol. 38, Illinois Annot.Stat. § 16–1, defining "theft."

the objects on sale and made some examination of the shop premises. He remained in the shop for approximately thirty to forty-five minutes. During that time, he spoke to the store proprietor, Richard Long, and Eva Moore, the manager of the shop, expressing an interest in the art objects on display. He stated, however, that he could not purchase anything at that time because he had no money. He then left, stating that he would return. Stokley did not return to the store later that afternoon during store hours.

That evening, after the shop had closed, Richard Long went to sleep about 9:30 p. m. in the back of the store on a folding cot. He had been sleeping in the shop since a burglary of the shop which had occurred several weeks earlier. Approximately 11:30 p. m., Long was awakened by the sound of breaking glass in the outer entrance of the shop. He immediately arose from his cot and reached around the door of the back room in which he had been sleeping for a rifle which he kept in the store. He took the gun out of its case and cocked it. He then heard the glass breaking out of the second entrance door to the shop. Thinking that the intruder might be a stranded motorist seeking shelter in the cold and snowy night, Long waited and observed, but said nothing. As he watched, Long could see the intruder enter the store, check the cash drawer located near the entrance, and proceed to the showcases located at the back of the store. Although the shop was dimly lit from the outside "yard" lights, Long could see the intruder opening and looting the showcases containing art objects on display. Then, when the intruder

again returned to the center of the shop, Long shot him twice. After that, Long went to the back room of the shop, turned on the lights there, and called the police. When the law enforcement officers arrived, the body of the insured was found lying in the center of the store with a bag of merchandise taken from the showcases beside him. The "cost" value of those items was approximately $380.00. Upon an investigation by the police, the insured's truck was later found parked across the highway and footprints were found leading from the truck to the shop.

While plaintiff's counsel adduced certain evidence which he contends is indicative of a third party involvement in the occurrence, hence having some tendency to exculpate the deceased, that evidence is purely circumstantial, considerably speculative, and unpersuasive. On the other hand, the testimony and evidence adduced by the defendants overwhelmingly negates any conclusion but that the deceased was killed in the commission of a felony. This conclusion is fully substantiated by the direct testimony of the shop proprietor, numerous law enforcement officers who investigated the incident, other persons on the scene immediately after the occurrence, and the substantial circumstantial evidence adduced by the defendants.

Based upon the evidence adduced at trial, it is the contention of the defendants that the death of the deceased was not "accidental" within the terms of the policies since the insured, by his own criminal misconduct, induced the reasonably foreseeable act which resulted in his death.[5] Conversely, the plaintiff urges that she is entitled to recovery

---

5. Counsel for the plaintiff contends that defendants are foreclosed from raising this defense since it was not affirmatively pleaded in their answers to plaintiff's complaint. This contention is entirely without merit since such is not an affirmative defense, but rather an evidentiary showing to negate plaintiff's contention that the insured's death was accidental. See: O'Brien v. Equitable Life Assurance Society of United States, 212

F.2d 383 (8th Cir. 1954); Gennari v. Prudential Ins. Co., 335 S.W.2d 55 (Mo. Sup.Ct. 1960); Di Paoli v. Prudential Ins. Co., 384 S.W.2d infra at 864–865. Furthermore, even assuming that such constituted an affirmative defense, plaintiff's counsel has been fully apprised of this defense from the earliest stage of this proceeding and no prejudice or surprise resulted from defendants' failure to plead such defense in their answers.

under the "accidental death" provisions of the policies because: (1) the policies in question do not contain any provisions exempting the defendants from liability where the insured died as a result of a violation of the law, and (2) the insured died as the result of alleged excessive force on the part of the proprietor of the Asian Arts Shop.

■■ Plaintiff's first contention is without merit. Under the law of Missouri, an insured's death is not "accidental" where the insured himself, by his own criminal misconduct, has provoked or induced that which led to his death and the fatal result was the natural and probable consequence of his criminal misconduct. Sellars v. John Hancock Mutual Life Ins. Co., 149 S.W.2d 404, 409 (St. Louis Ct.App., 1941); Di Paoli v. Prudential Ins. Co., 384 S.W.2d 861 (St. Louis Ct.App., 1964); Berne v. Prudential Ins. Co., 129 S.W.2d 92, 98 (St. Louis Ct.App., 1939); Eagan v. Prudential Ins. Co., 128 S.W.2d 1085, 1088 (K.C.Ct.App., 1939); and State ex rel. Prudential Ins. Co. v. Shain, 119 S.W.2d 309 (Mo.Sup.Ct., 1938). Thus, in such circumstances, the injury and death of the insured does not fall within the coverage of the provisions of an insurance policy insuring against death by "accidental bodily injury," even in the absence of an express exclusion in the policy.[6]

■ There remains plaintiff's contention that the insured's death was "accidental" because he died as the result of excessive force which he could not reasonably anticipate. This Court cannot agree. The evidence supports the only reasonable conclusion that the insured entered the shop at night fully intending to steal valuable objects from it. In such circumstances, the insured, as a reasonable man, could fully expect to be shot and killed if detected. See: McGuire v. Metropolitan Life Ins. Co., 46 S.W.2d 53 (Tenn.Sup.Ct.1932); Eagan v. Prudential Ins. Co., *supra*. Furthermore, the evidence and testimony in this case refutes any contention that the force used by Long was "excessive." The insured was shot at night in a relatively-isolated, dimly-lit building. The shop had been previously burglarized and the proprietor slept there primarily because of this prior incident. When the proprietor encountered the intruder, he fully and reasonably expected the intruder to be armed. Confronted with a potentially armed and dangerous person who was in the process of stealing valuable merchandise, it is not unreasonable to conclude that the proprietor was in fear for his life. Under such circumstances, it can hardly be said that his action constituted the use of "excessive force."[7] Therefore, in view of the cir-

6. In support of plaintiff's contention that she is entitled to recovery under the policies since there are no express provisions excluding recovery where the insured was killed in the commission of a felony, counsel primarily relies upon the Missouri decision in Bird v. John Hancock Mutual Life Ins. Co., 320 S.W.2d 955 (St. Louis Ct.App., 1959). That case is, however, factually and legally distinguishable from the authority cited above and the circumstances presented in this proceeding. In Bird, the insured, while armed, was killed in an attempt to rob a cocktail lounge. Following the refusal of the insurer to pay the entire proceeds of a life insurance policy which provided for both "ordinary" life insurance benefits and double indemnity benefits for accidental death, the beneficiaries brought suit to recover *only* for the proceeds un-

der the "ordinary" life insurance benefits. No claim was made under the double indemnity provisions of the policy. The court, affirming the verdict in favor of the beneficiaries, held that public policy considerations in preventing felonies did not bar recovery of "ordinary" life benefits in the absence of an express exclusionary clause in the policy. The court, however, carefully distinguished prior Missouri cases involving questions of coverage under the accidental provisions of insurance policies. Thus, the decision in Bird is not controlling in the present case since this plaintiff seeks recovery solely under the accidental death provisions of the policies in question and the issue of coverage is involved.

7. It is noteworthy that following an exhaustive investigation of the incident

cumstances, it can only be concluded that the insured died as the result of a reasonably foreseeable act which had been induced by his own criminal misconduct. Thus, his death did not occur as the result of "accidental bodily injury" and was not covered by the provisions of the policies upon which plaintiff seeks to recover.

Accordingly, for the reasons stated above, the Court hereby grants recovery in favor of the defendants and against the plaintiff. The costs of this proceeding are to be borne by the plaintiff.

It is so ordered.

by law enforcement officers and after a full coroner's inquest, no criminal charges were ever brought against the shop proprietor.