Dissenting Opinion bv
Packed, J.:
Is there an accidental injury when an escaping felon is shot? That is the question which the court below answered in the negative and therefore granted summary judgment to the appellee.
The appellant sought recovery of $10,935 on a hospital expense policy and a major medical expense policy, both originally issued in 1962. The appellant was the insured under the policies and was entitled to payment of eligible expenses for himself and his dependents, including a son. The son was attending college when, on May 26, 1969, he was shot attempting to flee from the scene of a burglarized record shop. He died *428 three months later. These facts were stipulated and both sides sought summary judgment.
Both policies provided coverage for expenses incurred as a result of injury and provided that: “ ‘Injury’ as used in this Policy means accidental bodily injury which causes the loss directly and independently of all other causes. . .” Both policies had exclusionary provisions, but the only possibly pertinent exclusion was in the major medical expense policy which excluded “intentionally self inflicted injury.”
The course of Pennsylvania law on what is “accidental” under insurance law was dramatically changed in the important opinion of Mr. Justice Roberts in the leading case of Beckham v. Travelers Ins. Co., 424 Pa. 107, 111, 225 A. 2d 532, 533 (1967), in which he relied on the following language of a famous dissent of Mr. Justice Cardozo: “The attempted distinction between accidental results and accidental means will plunge this branch of the law into a Serbonian Bog. ‘Probably it is true to say that in the strictest sense and dealing with the region of physical nature there is no such thing as an accident.’ On the other hand, the average man is convinced that there is, and so certainly is the man who takes out a policy of accident insurance. It is his reading of the policy that is to be accepted as our guide, with the help of the established rule that ambiguities and uncertainties are to be resolved against the company. The proposed distinction will not survive the application of that test.” The demise of the accidental means — accidental result dichotomy, as far as Pennsylvania is concerned, makes it immaterial whether appellant’s son had taken an unreasonable risk in attempting to escape for, as Mr. Justice Roberts points out (424 Pa. at 117, 225 A. 2d at 537) : “More importantly, the attempt to determine, on the basis of the clause in question, what is and what is not an un *429 reasonable risk will return us to the Serbonian bog from which we are attempting to escape. While we see nothing improper in a contractual limitation which would disclaim coverage in cases such as the instant one, we are unwilling to recognize such a restriction on the basis of the ambiguous language contained in this policy which the company knew was susceptible of different interpretations.”
Here it is true that one of the policies disclaimed coverage as to intentionally self-inflicted injury. It may have been the intention of the officer to inflict the injury, but certainly the appellant’s son did not intend to inflict injury upon himself. He manifestly thought that he could flee successfully. If there were a real issue as to his intention it would be a jury question comparable to the issue in Beckham, supra, where there was uncertainty whether the taking of drugs was with the intention of committing suicide or was an unintentional overdose.
If the insured in the instant case were the appellant’s son and recovery were being sought by the son, it might well be appropriate to consider public policy reasons against allowing recovery for an injury sustained during the course of a person’s criminal activity. That, however, is not this case. Here it is an innocent person who is seeking recovery and his right should not be tainted by the criminality of his son. In fact, the tenor of the cases appears to warrant recovery even if such taint were imputed to the appellant.[1]
*430 Judgment should be reversed with the direction that judgment be entered in favor of the appellant.
Hoffman and Spaulding, JJ., join in this dissent.

 Cf. Eisenman v. Hornberger, 438 Pa. 46, 50, 264 A. 2d 673, 675 (1970), where the court points out: “We note initially that the insurance contract itself does not contain a ‘violation of law’ clause. Royal is thus placed in the position of asserting that we should rewrite the policy to provide for a contingency which it could have provided for itself. However, under the facts of this case, we are not confronted with any overriding public policy which would preclude recovery. There is no evidence whatsoever that the policy *430 was procured in contemplation of the crime. Nor can the insurance policy be said to have promoted the unlawful act. Moreover, it seems equally implausible that denying coverage would serve as a crime deterrent. Finally, the insurance policy in no way saves the insured from the consequences of his criminal act. In the context of this case, the sanctions of the criminal law and the coverage of the insurance policy address themselves to quite separate and distinct actions on the part of the insured.” In accord: Dooley v. Metropolitan Life Ins. Co., 104 N.J. Super. 429, 250 A. 2d 16S (1969) ; Dent v. Virginia Mut. Ben. Life Ins. Co., 226 A. 2d 166 (D.C. App. 1967) ; Bird v. John Hancock Mut. Life Ins. Co., 320 S.W. 2d 955 (Mo. App. 1959).