Cheryl YOUNG, Plaintiff-Appellee,

v.

J.C. PENNEY LIFE INSURANCE COMPANY, Defendant-Appellant.

No. 82–1564.

United States Court of Appeals, Seventh Circuit.

Argued Nov. 3, 1982.

Decided March 9, 1983.

Clark H. Cole, Armstrong, Teasdale, Kramer & Vaughan, St. Louis, Mo., for defendant-appellant.

Mark I. Bronson, St. Louis, Mo., for plaintiff-appellee.

Before PELL and CUDAHY, Circuit Judges, and BONSAL,* Senior District Judge.

* Senior District Judge Dudley B. Bonsal of the Southern District of New York is sitting by designation.

PER CURIAM.

Defendant J.C. Penney Life Insurance Company appeals from a judgment entered December 2, 1981 in the United States District Court for the Southern District of Illinois, Beatty, J. The judgment followed a jury verdict in favor of plaintiff Cheryl Young in her action to recover the proceeds of an accidental death policy issued in Missouri, covering her and her husband, Anderson Young. Defendant's post-trial motion for judgment notwithstanding the verdict or in the alternative for a new trial was denied by the district court by order filed March 4, 1982.

On appeal, defendant contends that the district court erred in not granting its post-trial motion because: (1) the plaintiff failed to establish, under Missouri law, that her husband's death was accidental; (2) plaintiff's attorney's repeated references to the exclusions contained in the insurance policy were intended to confuse the jury; and (3) defendant was prejudiced by the court's decision to send the policy to the jury during its deliberations. We conclude that defendant has not shown that it is entitled either to judgment notwithstanding the verdict or to a new trial, and accordingly affirm the judgment of the district court.

## I.

The plaintiff Cheryl Young, a resident of St. Louis, Missouri, held an insurance policy issued by the defendant, which provided for payment to her of $15,000 in the event of the accidental death of her husband, Anderson Young. Following his death in Brooklyn, Illinois on August 11, 1979, the plaintiff's claim to the proceeds of the policy was rejected by defendant, on the ground that her husband's death was not accidental. At trial, the plaintiff testified that she was not with her husband when he died and did not know what he was doing in Illinois at the time. She stated that she had last seen him the morning before when he was wearing tight pants and that he was not carrying a gun. She also testified that she was not aware of her husband carrying guns. Two Brooklyn, Illinois police officers testified that they were on patrol the night of August 10, 1979 with Chief of Police Douglas. On seeing Anderson Young's car, they followed it into a parking lot in order to question Young about a shooting that had occurred two days before. Both officers testified that Young began yelling at them and, as he reached for his waist with his right hand, Chief Douglas fired two shots at him. The officers testified that they saw a gun on Young, which Chief Douglas removed from him. They also testified that they saw Young reach up under his shirt where they observed a second gun, at which point one of them pulled out a revolver and shot Young again.

On cross-examination, the officers admitted to giving statements soon after the incident which did not mention the existence of any guns. One statement described Young's hand reaching for his waist but did not say that a gun was seen, while the other described Chief Douglas removing something from Young's hand but did not identify it as a gun. The only exhibits introduced at trial were the insurance policy, a death certificate for Anderson Young and a number of letters exchanged between the plaintiff and the defendant concerning the plaintiff's claim to the proceeds of the policy. The death certificate indicated that Young died as a result of a gunshot wound to the chest and two gunshot wounds to the head.

Prior to closing argument, the defendant moved that the insurance policy not be sent to the jury on the ground of relevancy, asserting that the only issue was whether Young's death was accidental. The district court granted the motion, but later sent the policy to the jury in response to a note requesting it.

## II.

■ Defendant first contends that the plaintiff, as a matter of law, failed to show that her husband's death was accidental, and the district court was therefore required to grant defendant's motion for judgment notwithstanding the verdict. The plaintiff does not dispute the defendant's claim that Missouri law is controlling

on the issue of accidental death, since the insurance contract was executed in that state. *See Hamilton Die Cast, Inc. v. United States Fidelity & Guaranty Co.*, 508 F.2d 417, 419 (7th Cir.1975). Under Missouri law, a death is presumed to be accidental when it was caused by "violent means." *Stogsdill v. General American Life Insurance Co.*, 541 S.W.2d 696, 699 (Mo.App. 1976). The presumption may be rebutted by "substantial evidence controverting the presumed fact." *Di Paoli v. Prudential Insurance Co.*, 384 S.W.2d 861, 865 (Mo.App. 1964). There is no dispute here that "violent means" caused Anderson Young's death. Defendant contends that the testimony of the two police officers was sufficient to rebut the presumption of accidental death. The presumption having been rebutted, the burden of going forward shifted back to the plaintiff, who had to "make a submissible case of accidental death without resort to the presumption." *Connizzo v. General American Life Insurance Co.*, 520 S.W.2d 661, 665 (Mo.App.1975). Defendant contends that the plaintiff failed to do so as a matter of law.

Our decision here "turns on the determination of whether under the facts, as disclosed by the record, there was sufficient evidence to warrant the submission of the case to the trier of fact. In making this determination, we are obliged to view all the evidence, together with all reasonable inferences therefrom, in the light most favorable to plaintiffs." *Hannigan v. Sears, Roebuck and Co.*, 410 F.2d 285, 288 (7th Cir.1969) (citations omitted); *see also George v. Howard Construction Co.*, 604 S.W.2d 685, 688 (Mo.App.1980). It is true that the evidence of accidental death presented by the plaintiff was somewhat limited. Her testimony that her husband was not carrying a gun twelve or more hours before he was shot hardly constitutes proof that he was not carrying guns at the time of his death. On the other hand, it was the function of the jury to determine from the evidence submitted to it whether Young's death was accidental. We feel that the jury had sufficient evidence to make this determination.

Under Missouri law, Anderson Young's death does not qualify as accidental if "his own criminal misconduct ... provoked or induced that which led to his death and the fatal result was the natural and probable consequence of his criminal misconduct." *Stokley v. Hartford Accident and Indemnity Co.*, 321 F.Supp. 18, 21 (W.D. Mo.1970). Plaintiff's testimony and the conflicting statements of the police officers brought out on cross-examination (in contrast to their testimony on direct) established a jury question as to whether Young provoked his own death by reaching for a gun. Furthermore, the jury could have drawn unfavorable inferences from the failure of the defendant to call Chief Douglas as a witness or to introduce into evidence the guns allegedly taken from Young. It is possible, of course, that the jury simply chose to disbelieve the testimony of the two officers. Under the circumstances, no basis exists for holding that Young's death was not accidental as a matter of law. We find only that there was sufficient evidence to warrant the submission of the case to the jury and thus the district court correctly denied defendant's motion for judgment notwithstanding the verdict.

### III.

Defendant next contends that the district court should have ordered a new trial based on the prejudicial effect of references made by the plaintiff's attorney to specific exclusions in the insurance policy.[1] According to the defendant, the attorney repeatedly disregarded the court's admonition not to discuss these exclusions and, as a

---

1. The policy expressly excluded losses resulting from:

"(1) intentionally inflicted injury by self or any family member; (2) declared or undeclared war or any act thereof; (3) mental or emotional disorders; (4) injury received while participating in any speed contest; (5) injury received while acting as a pilot or crew member in any aircraft or while a passenger other than a fare-paying passenger in any aircraft; or (6) the use or taking of any narcotic, barbiturate or any other drug unless taken or used as prescribed by a physician."

result, the jury was led to believe that shooting deaths were covered by the policy because not specifically excluded.[2] Under Missouri law, deaths induced by the insured's own criminal misconduct are excluded from coverage, "even in the absence of an express exclusion in the policy." *Stokley, supra,* 321 F.Supp. at 21.

A motion for new trial is "addressed to the trial court's discretion, and on appeal the scope of review is limited to whether the trial court abused its discretion in ruling on the motion." *Hahn v. Becker,* 588 F.2d 768, 771 (7th Cir.1979). We do not find that the jury was so likely to have been misled by the statements of plaintiff's attorney that a new trial is necessary. The examples cited by the defendant reveal that the court several times sustained objections by defendant when the policy exclusions were mentioned. *Cf. Curtis v. Greenstein Trucking Co.,* 397 F.2d 483, 486 (7th Cir. 1968) (fact that defendants made 60 objections, of which only seven were overruled, does not on its face "indicate a course of conduct so prejudicial to defendants' interests as to automatically require a new trial."). More importantly, in the absence of any evidence that the court's charge to the jury was inadequate, there is no reason to think that the jury misunderstood the law. As to defendant's claim that the jury's confusion is demonstrated by its request to look at the insurance policy after only ten minutes of deliberations, we agree with the district court that the jury's request might just as well have resulted from its uncertainty about the other elements of the plaintiff's burden of proof. The district court's failure to grant a new trial on this ground was therefore not an abuse of discretion.

## IV.

Defendant's final contention is that the district court's decision to send the insurance policy to the jury, after earlier announcing it would not do so, was so prejudicial to the defendant that a new trial is warranted. The crux of defendant's claim

of prejudice is that its attorney relied on the district court's initial ruling in composing his closing argument. Believing that the jury would not be permitted to examine the policy, he deliberately chose not to refer to it in his argument.

The insurance policy was introduced into evidence by the plaintiff, apparently with no objection from defendant. The law clearly leaves to the trial judge's discretion the decision whether to allow exhibits admitted into evidence to be taken into the jury room. *See* C. McCormick, Handbook of the Law of Evidence 393–94 (1954). Here, the record shows that the district court considered the defendant's objections but concluded that the jury should have the insurance policy, since it had been admitted into evidence and discussed during the trial. Defendant has not shown that it was unduly prejudiced by this decision; indeed, a contrary decision could have done more harm to defendant. We do not think that the district court abused its discretion in allowing the jury to examine the policy during deliberations and therefore a new trial was not required on this ground.

For all the foregoing reasons, the judgment of the district court is AFFIRMED.

---

**2.** For example, in the course of his closing argument plaintiff's attorney recited several of the exclusions listed in the policy, and then said: "They should have excluded gunshot wounds if they wanted to in the same respect, but they didn't."