GRAND RIVER LIME CO., APPELLANT, *v.* OHIO CASUALTY INS. CO., APPELLEE.

(No. 71-394—Decided April 25, 1972.)

*Messrs. Glander, Brant, Ledman & Newman,* for appellant.

*Messrs. Vorys, Sater, Seymour & Pease,* for appellee.

HOLMES, J. This is an appeal of a summary judgment in favor of the defendant, Ohio Casualty Insurance Company, and against the plaintiff, Grand River Lime Company, in the Common Pleas Court of Franklin County, Ohio.

Briefly, the background of the matter is that Grand River filed a declaratory judgment action in the Franklin County Common Pleas Court seeking a determination of the question of whether Ohio Casualty had the obligation pursuant to a contract of insurance to provide a defense for Grand River in a civil action pending against the latter in Lake County, Ohio.

The Lake County suit is a class action brought by some 200 residents of the village of Fairport Harbor against Grand River, in which the complaint alleges property damage and personal injury to members of the class caused by Grand River in its quarrying and manufacturing operations as a result of the emission of air pollutants for a period of some seven years.

Grand River filed a motion for summary judgment in the declaratory judgment action. Ohio Casualty followed with its own motion for summary judgment. The trial court overruled Grand River's motion and sustained the motion of Ohio Casualty.

The plaintiff, appellant herein, sets forth two assignments of error, one that the trial court erred in sustaining the appellee's motion for summary judgment; and, conversely that the trial court erred in failing to sustain the appellant's motion for summary judgment.

The first assignment of error is subdivided into three branches as follows:

"A) A Pleading Containing any Claim Potentially Within The Coverage of a Liability Insurance Policy Requires The Insurer to Provide a Defense To Its Insured.

"B) The Claims Set Forth in the First Cause of Action of the Amended Petition Filed in the Lake County Suit Constitute an 'Occurrence' as Defined in the General Liability Policy.

"C) Appellant Fully Complied With All Conditions of the Policy of Insurance and, Specifically, Gave Adequate Notice of the Lake County Claim to Appellee."

However, in that the defendant, appellee in this action, has not argued, either in its brief or orally (subdivision (C) relating to the question of adequate notice) we shall pass

this point and assume that any complaint as to notice has been effectively waived.

(A)

The question presented in this branch of the assignments of error concerns the duty of the insurance carrier to defend its insured within the framework of the particular wording of the contract of insurance, and in light of the allegations of the pleadings in the action as brought against the insured in Lake County.

The general rule as to the duty of an insurance company to defend has been well stated in the case of *Lessak* v. *Metropolitan Cas. Ins. Co.* (1958), 168 Ohio St. 153, where, in the second paragraph of the syllabus the following is found:

"2. The sole test as to the duty of an insurance company, under a policy of liability insurance, to defend an action against the insured is the allegations of the petition in the action against the insured, and where such petition brings the action within the coverage of the policy, the insurer is required to make defense, regardless of the ultimate outcome of the action or the liability to the insured. (*Socony-Vacuum Oil Co.* v. *Continental Casualty Co.*, 144 Ohio St., 382, approved and followed.)"

Under the terms of the general liability policy as issued by Ohio Casualty to Grand River, Ohio Casualty agreed as follows:

"The company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of

"Coverage A. bodily injury or

"Coverage B. property damage to which this insurance applies, caused by an occurrence, and the company shall have the right and duty to defend any suit against the insured seeking damages on account of such bodily injury or property damage, even if any of the allegations of the suit are groundless, false or fraudulent, and may make such investigation and settlement of any claim or suit as it deems expedient, but the company shall not be obligated to pay any claim or judgment or to defend any suit after the

applicable limit of the company's liability has been exhausted by payment of judgments or settlements."

Within the policy, we find a definition section which provides the definition of "occurrence" as follows:

" 'Occurrence' means an accident, including injurious exposure to conditions, which results, during the policy period, in bodily injury or property damage neither expected nor intended from the standpoint of the insured * * * "

As stated previously, in order to determine the obligation of the insurer to defend, we must view the above quoted sections of the policy in the light of the allegations of the petition as filed against the insured.

The amended petition in the Lake County case contains two causes of action, each founded upon different theories of liability. The first cause of action contains allegations of nuisance and trespass. It is alleged that Grand River was guilty in the following respects.

" * * * [In] allowing said industrial wastes to be emitted in large quantities from their stacks and to settle on the person, houses, automobiles, and other chattels of the plaintiff, constitute a continuing nuisance and trepass in the following particulars, to wit:

"(1) In emitting large quantities of industrial wastes into the atmosphere through their stacks when the defendants knew or should have known that such materials would come to rest on the person, houses, automobiles, and chattels of the plaintiff and damage the same;

"(2) In failing to provide for adequate safeguards to prevent the said industrial wastes from entering the atmosphere and settling on the person, lands and houses and automobiles and chattels of others, and more particularly, the person and houses and automobiles and chattels of the plaintiff, and causing damage thereto.

"(3) In failing to use its own property and premises so as not to injure the person, property, and chattels of another, and more particularly, the person, property, and chattels of the plaintiff."

The second cause of action as found within the

amended petition alleges: "over a period of more than seven (7) years, the defendants have been made aware of the damage caused by the emission into the atmosphere of corrosive industrial wastes from their stacks * * *."

Further, the second cause of action sets forth: "* * * the defendants have been requested to correct the aforementioned conditions, but have not to this date done so; have been requested to protect the property rights of those citizens whose premises are situated with the surrounding areas of the defendants' manufacturing and processing operations, but have to this date failed to do so."

The plaintiff then alleges that such acts "constitute willful and intentional misfeasance and malfeasance on the part of the defendants, and that the defendants have intentionally, willfully and wantonly conducted their manufacturing operations in such a manner as to injure the property rights of others * * *."

The allegations as made in the second cause of action assert the knowledge and willful intent of the defendant. Such allegations are not based upon nuisance, trespass or negligence as such are to be found in the first cause of action.

We hold, and the plaintiff concedes, that the defense of the second cause of action could not be required under the definition of "occurrence" as contained within the policy. Such allegations would not constitute a claim for damages "neither expected nor intended from the standpoint of the insured."

However, allegations of knowledge and intent do not appear in the first cause of action, and could well come within the meaning of "occurrence" as contained within the policy.

Appropriate for review here is the cause of *Socony-Vacuum Oil Co.* v. *Continental Cas. Co.* (1945), 144 Ohio St. 382, which case sets forth the following in the first paragraph of the syllabus thereof:

"1. The duty of a liability insurance company under its policy to defend an action against its insured is determined from the plaintiff's petition, and when that pleading

brings the action within the coverage of the policy of insurance, the insurer is required to make defense regardless of its ultimate liability to the insured."

We hold that there being a cause of action as alleged within the amended petition which could be within the coverage of the liability policy, Ohio Casualty has the duty to provide the defense even though the other cause of action is held not to be within the coverage.

(B)

There is presented here a neat question as to whether the allegations in the first cause of action in the Lake County suit against Grand River constitute an "occurrence" as defined in the Ohio Casualty policy of insurance.

The plaintiff argues that the definition of "occurrence" is broader than the term "accident" and that the duty of defense of an insurer who employs the term "occurrence" is broadened thereby. Further, plaintiff states that the purpose of the broader language is to make clear that coverage under the policy is for *"injury or damage"* and not the *"event or act"* producing such injury or damage.

Plaintiff sets forth in his argument that "an occurrence" need not be sudden but can be produced over a long period of time, and that the policy definition of "occurrence" employed by Ohio Casualty so provides in the use of the words "including injurious exposure to conditions."

Basically, the argument of the plaintiff is that the coverage under the Ohio Casualty policy is "result oriented" and that if the damages resulting from the insured's operation can be "neither expected nor intended from the standpoint of the insured," then the provision of the policy requiring the insurance company to defend is applicable.

On the other side of this issue, the defendant argues that liability policies were indeed changed a number of years ago to provide coverage for damages "caused by an occurrence," rather than for damages "caused by accident." However, the defendant argues that such change was intended to clarify the coverage provided by liability policies, and to avoid the confusion resulting from

courts attempting to distinguish between accidental means and accidental results.

The defendant urges that the use of the word "occurrence" in the policies before this court must be viewed in conjunction with the word "accident" in the definition, and it further emphasizes that "the occurrence or accident must result in bodily injury or property damage *neither expected nor intended from the standpoint of the insured.*"

Then, the defendant states: "If, however, the results are expected or intended from the standpoint of the insured, there is no coverage."

More particularly, the defendant's proposition may be stated that where the activity which produced the alleged damage is intended, and the residual by-products of such activity are known by the entity producing the by-products, such must result in injury or damage "expected or intended from the standpoint of the insured."

Applying this proposition to the instant case, the defendant argues that "it is apparent that a manufacturing company that emits substantial amounts of industrial waste into the atmosphere for a period of seven years as a direct result of its normal operations would necessarily be charged with expecting the damage to property which allegedly resulted * * *."

We adopt the argument as propounded by the plaintiff that the word "occurrence" is much broader than the term "accident." Such proposition is well stated in *Aerial Agricultural Service* v. *Till* (N. D. Miss. 1962), 207 F. Supp. 50, 57:

"To begin with, the word 'occurrence', to the lay mind, as well as to the judicial mind, has a meaning much broader than the word 'accident.' As these words are generally understood, accident means something that must have come about or happened in a certain way, while occurrence means something that happened or came about in any way. Thus *accident* is a special type of *occurrence,* but occurrence goes beyond such special confines and, while including accident, it encompasses many other situations as well."

We further adopt the plaintiff's proposition to the ef-

fect that while the activity which produced the alleged damage may be fully intended, and the residual results fully known, the damage itself may be completely unexpected and unintended.

As an example, the plaintiff Grand River was certainly aware of its particular manufacturing activity, and was undoubtedly aware of the residual emission of smoke, dust, etc., but yet it is quite questionable whether Grand River expected or intended the damaging results to the property owners, at least in the sense that the policy uses such terms.

Also, we think it better not to interpret the word "occurrence" in a sudden or momentary sense, but permit such term to encompass a period of time. Such, we feel, is in keeping with the words "including injurious exposure to conditions" as specifically used in the present policy.

That such interpretation may be given to the term "occurrence" is further strengthened by yet another provision in the policy entitled "Limits of Liability" where the following is to be found:

"Coverages A and B—For the purpose of determining the limit of the company's liability, all bodily injury and property damage arising out of continuous or repeated exposure to substantially the same general conditions shall be considered as arising out of one occurrence."

The instant insurance policy was issued to Grand River by Ohio Casualty with the full knowledge by the latter as to the nature of the business operation in which Grand River was engaged. The endorsements on the policy make this point quite clear.

If it was the intention of the insuring company to exclude any portion of Grand River's operation from the effects of the policy, that it had the right to do within the contract. Apparently Ohio Casualty did not wish to use other terms or other coverage in its policy, and if there be ambiguity within the terms of the policy, such must be resolved in favor of the insured. *Bobier* v. *National Cas. Co.* (1944), 143 Ohio St. 215.

Upon a trial of the merits of the matter in Lake County, Grand River may well be found to have negligent-

ly operated its plant, and through its polluting emissions have occasioned damages to the citizens of the community of Fairport Harbor. But these issues must be tried and defended by Ohio Casualty.

Having found that under the policy, and in light of the allegations in the first cause of action now pending against the plaintiff, there is a duty on the part of the defendant to defend, we hereby reverse the trial court's judgment granting summary judgment for the defendant Ohio Casualty and against the plaintiff Grand River.

Accordingly, we grant the summary judgment for the plaintiff.

*Judgment accordingly.*

STRAUSBAUGH and REILLY, JJ., concur.