[No. 2198-1.    Division One.    July 15, 1974.]

GRUOL CONSTRUCTION COMPANY, INC., *et al., Respondents* v. INSURANCE COMPANY OF NORTH AMERICA *et al., Appellants.*

*Detels, Draper & Marinkovich* and *Frank W. Draper* and *William Brosche, Jr.,* for appellants.

*Monheimer, Schermer, Van Fredenberg & Smith* and *Stephen P. Ryder,* for respondents.

FARRIS, J.—Insurance Company of North America and Northwestern Mutual Insurance Company appeal from the trial court's finding that each of them is jointly and severally liable to Gruol Construction Company, Inc., and Kenneth R. Gruol and Carol Gruol, his wife, for damages

caused by dry rot to the foundation of an apartment building.

Gruol entered the construction business in 1946 and since that time has engaged in both residential and commercial construction. In 1963 he built the apartment building in question. In December 1963, he entered into an earnest money agreement for the sale of the building to one Donovan; the sale was concluded in January 1964, after construction of the building was complete. The earnest money agreement provided:

> Builder agrees to complete the building in a workmanlike manner and according to architect and City Building Department approved plans and specifications.

In 1968, Donovan sued Gruol for damage to the building caused by dry rot which resulted from dirt having been piled against the box sills of the building by backfilling during construction. Gruol tendered the defense to his insurance carriers (Safeco covered 1962-February 1965; Insurance Company .of North America covered February 1965-February 1966; and Northwestern Mutual covered February 1966-February 1968). All three refused to defend. Gruol settled the claim with Donovan and brought action against all three insurance carriers for breach of contract. The trial court entered judgment against the three, finding them jointly and severally liable in the amount of $15,212.30. INA and Northwestern Mutual appeal; we affirm.

In entering judgment for Gruol, the trial court found that (1) the dry rot was an "accident" or "occurrence" since it was a condition which unexpectedly and unintentionally caused injury, and (2) that the injury and damage was a continuing process until its discovery in 1968. Accordingly, the trial court found that the insurance policies of all three carriers covered the injury and damage and that each had breached its contract when it declined to defend the suit by Donovan against Gruol.

The initial question is whether the dry rot was an "accident" or "occurrence" under the provisions of the insurance contracts. The Safeco policy provided coverage for "accidents" and except for the first 6 months of the coverage of the INA policy wherein "accident" was the term used, both INA and Northwestern Mutual provided coverage for damages due to an "occurrence." The term "accident" is not defined in the policies; however, the INA policy defined "occurrence" as

> either an accident happening during the policy period or a continuous or repeated exposure to conditions which unexpectedly and unintentionally causes injury to or destruction of property during the policy period.

Northwestern defined "occurrence" as

> an event, or a continuous or repeated exposure to substantially the same general conditions, which causes . . . property damage during the policy period resulting from acts or omissions by the Insured which would not be intended nor, with reasonable certainty, be expected by the Insured to produce injury. All injury or damage arising out of such exposure to substantially the same general conditions shall be considered as arising out of one occurrence.

Both terms were defined by the court in *Truck Ins. Exch. v. Rohde*, 49 Wn.2d 465, 469, 303 P.2d 659, 55 A.L.R.2d 1288 (1956):

> An accident is ". . . an undesigned and unforeseen occurrence of an afflictive or unfortunate character; . . ."
> An occurrence is "Any incident or event, esp. one that happens without being designed or expected; . . ."
> . . . However, in our opinion and for the purposes of this case, the terms, "accident" and "occurrence," are synonymous.

*See also Viking Automatic Sprinkler Co. v. Pacific Indem. Co.*, 19 Wn.2d 294, 142 P.2d 394 (1943); Annot., 7 A.L.R.3d 1262 (1966). We find substantial evidence to support the trial court's finding that the dry rot came within the definition of "accident" and "occurrence" as used in the contracts

of insurance. The record reflects testimony of Gruol that he had no knowledge of the defective backfilling or concrete work until its discovery in 1968; that the defective condition was not observable after a concrete cap was put over the dirt and after completion of the building; and that the damage caused by dry rot was not foreseeable.

There is a significant difference in the facts here and the facts in *Tieton v. General Ins. Co. of America*, 61 Wn.2d 716, 380 P.2d 127 (1963) upon which the appellants rely. In *Tieton*, the municipality constructed a sewage installation with knowledge that a private well on adjacent property might be contaminated. The damage which resulted when the possibility of contamination became a reality was not unusual, unexpected or unforeseen and, therefore, not an "accident." Had the trial court found that Gruol knew about the defective backfilling and its possible result, the parallel could properly be drawn. *See McGroarty v. Great Am. Ins. Co.*, 43 App. Div. 2d 368, 351 N.Y.S.2d 428 (1974); *Kimball v. St. Paul Fire & Marine Ins. Co.*, 190 Neb. 152, 206 N.W.2d 632 (1973). We recognize that dry rot is the expected result when moisture is introduced to dirt which is too close to wood but the fact that the condition (defective backfilling) was not detected during construction supports the finding that the dry rot which resulted from the unknown condition was unexpected. It cannot be disputed that it was undesigned.

██ The question then becomes which insurer covered the damage—the insurer at the time of the defective backfilling, at the time of the discovery of the dry rot, or all insurers providing coverage during the total time period of the undiscovered condition which progressively worsened. The answer is determined by a consideration of whether the term "accident" or "occurrence" as used in the policy must of necessity be a single isolated event or whether it can be a continuing condition or process. The question is not a novel one:

The accident mentioned in the policy need not be a blow

636

but may be a process. It is not required that the injury be the result of some contact with the bulldozer or the shelf or a rock hurled over from the shelf. It is not required to be sudden like an Alpine avalanche . . . A glacier moves slowly but inevitably.

*Travelers· v. Humming Bird Coal Co.,* 371 S.W.2d 35, 38 (Ky. Ct. App. 1963). In *McGroarty v. Great Am. Ins. Co., supra* at ..........., the court recognized that under certain circumstances an "ensuing result may truly be termed· an accident, even though there is a lapse of time between the initial negligent act and the occurrence of the ultimate damage . . ." *See also Kimball v. St. Paul Fire & Marine Ins. Co., supra.* Here, the resulting damage was continuous; coverage was properly imposed under the language of the policy on INA and Northwestern Mutual even though the initial negligent act (the defective backfilling) took place within the period of Safeco's policy coverage.

▪ INA and Northwestern Mutual argue, however, that even if there was an "accident" or "occurrence" there was no coverage because of exclusionary language in each contract of insurance. INA relies upon exclusion (j) (4) of its policy which provides that the policy does not apply

under Coverage C, to injury to or destruction of . . . (4) any goods, products or containers thereof manufactured, sold, handled or distributed or premises alienated by the named Insured, or work completed by or for the named Insured, out of which the accident arises.

Northwestern Mutual relies upon exclusion (d) (4) of its policy which provides:

This policy does not apply: . . . (d) to property damage: . . . (4) to any goods, products or containers thereof manufactured, sold, handled or distributed or premises alienated by the named Insured, or work completed by or for the named Insured, out of which the occurrence arises.

The issue was resolved in *Liberty Bldg. Co. v. Royal Indem. Co.,* 177 Cal. App. 2d 583, 587, 346 P.2d 444, 2 Cal.

Rptr. 329 (1960), where the court in construing a similar exclusion held:

> This Exclusion means that if the insured becomes liable to replace or repair any "goods or products" or "premises alienated" or "work completed" after the same has caused an accident because of a defective condition, the cost of such replacement or repair is not recoverable under the policy. However, if the accident also caused damage to some *other* property or caused personal injury, the insured's liability for such damage or injury becomes a liability of the insurer under the policy, and is not excluded.

*See also S.L. Rowland Constr. Co. v. St. Paul Fire & Marine Ins. Co.,* 72 Wn.2d 682, 434 P.2d 725 (1967). We agree with the trial court's conclusion in light of the decision in *Liberty Bldg. Co. v. Royal Indem. Co., supra.* The language of the exclusionary clauses refers only to the defective backfilling; there is, therefore, no coverage for the replacement of the defective backfilling but there is coverage for damage which resulted from the defective work. *See S.L. Rowland Constr. Co. v. St. Paul Fire & Marine Ins. Co., supra.*

■ Both INA and Northwestern Mutual argue that the court erred in finding them jointly and severally liable. They assert that Gruol had the burden of proving the amount of damage that occurred within the time limits of each policy. We disagree. In a dispute between an insured who has sustained damages of a continuing nature, and the insurance carriers providing coverage, the burden of apportionment is on the carriers. The question turns upon whether the damage is joint or several. Here, the trial court properly found joint and several liability. *See Kuhn v. Grant County,* 201 Kan. 163, 439 P.2d 155 (1968); *Royal Globe Ins. Co. v. Industrial Accident Comm'n,* 63 Cal. 2d 60, 403 P.2d 129, 45 Cal. Rptr. 1 (1965); *Fireman's Fund Indem. Co. v. Industrial Accident Comm'n,* 39 Cal. 2d 831, 250 P.2d 148 (1952); 11 G. Couch, *Insurance* §§ 44:190, 44:191 (2d ed. R. Anderson 1963). The damage, though

638

continuing over a period of time, constituted a single injury. *See Fugere v. Pierce*, 5 Wn. App. 592, 490 P.2d 132 (1971).

Finally, appellants argue that their refusal to defend was proper in any event, because the complaint failed to apprise them of the basis of the claim. We find that the complaint adequately stated a cause of action within the contract of insurance. *See Bosko v. Pitts & Still, Inc.*, 75 Wn.2d 856, 454 P.2d 229 (1969); *Northern Pac. Ry. v. National Cylinder Gas Div.*, 2 Wn. App. 338, 467 P.2d 884 (1970).

Affirmed.

JAMES and CALLOW, JJ., concur.

Petition for rehearing denied October 8, 1974.

Review denied by Supreme Court December 16, 1974.