**HAMILTON DIE CAST, INC.,**
**Plaintiff-Appellant,**

v.

**UNITED STATES FIDELITY AND**
**GUARANTY COMPANY,**
**Defendant-Appellee.**

No. 74–1077.

United States Court of Appeals,
Seventh Circuit.

Argued Nov. 6, 1974.

Decided Jan. 3, 1975.

Barry T. McNamara, Chicago, Ill., for plaintiff-appellant.

Robert L. Kiesler, Chicago, Ill., for defendant-appellee.

Before SWYGERT, Chief Judge, MARIS, Senior Circuit Judge,* and CUMMINGS, Circuit Judge.

CUMMINGS, Circuit Judge.

In November 1972, plaintiff brought this declaratory judgment action seeking a determination of its rights under a contract of insurance issued by defendant which insured plaintiff against its liability for personal injuries and property damage caused by an "occurrence." In November 1971, Midland Sporting Goods ("Midland") sued plaintiff, which had agreed to manufacture for Midland all of its requirements of aluminum die cast tennis rackets.[1] Midland claimed that the tennis racket frames were to be of good and merchantable quality and "porosity and oxide free, of optimum metal density and free of shrinkage." According to Midland's complaint, the number of rejects in the lots produced by plaintiff was not to exceed 1% and an implied warranty that the goods would be merchantable attached under Section 2–314 of the Uniform Commercial Code (Ill.Rev.Stats. ch. 26, § 2–314 (1973)). Midland sought $2,000,000 in damages from plaintiff for the following reasons set forth in its complaint:

"6. Defendant failed to make timely shipment and delivery of the said tennis rackets.

"7. Defendant failed to furnish to plaintiff all its requirements of said tennis rackets.

"8. The tennis rackets which were manufactured by defendant and sold and delivered to plaintiff were not of good and merchantable quality. The said tennis rackets were not porosity and oxide free, were not of optimum metal density and were not free of shrinkage.

"9. The number of rejects in the lots of tennis rackets manufactured by defendant and sold and delivered to plaintiff exceeded 1%."

Paragraph 10 of the complaint describes the damages that Midland claims:

"10. As a result of the matters set forth in the foregoing paragraphs 6, 7, 8 and 9, plaintiff's supply of tennis rackets was not sufficient for it to

---

* Senior Circuit Judge Albert B. Maris of the Third Circuit is sitting by designation.

1. Although Midland's complaint refers to "tennis rackets," it is clear that plaintiff was commissioned to make only the frames. Apparently Midland would then undertake to complete the rackets by adding string, handles, etc. This fact is crucial to plaintiff's theory of the case before us.

satisfy the demand for such rackets, plaintiff was required to refund the purchase price of defective tennis rackets which were returned to it, and the reputation of plaintiff and its tennis racket in the market was damaged. By reason of the foregoing, plaintiff has suffered damages to the extent of $2,000,000."

As a result of the alleged defects Midland withdrew its tennis rackets from the market. As of the time of the oral argument before us, Midland's suit had not yet been tried.

Plaintiff tendered the defense of the Midland action to defendant under its comprehensive general liability insurance policy, but defendant refused the tender on various grounds. In its answer to the instant complaint, defendant asserted that (1) there was no "occurrence," as required by the insurance policy; (2) there was no "property damage" within the meaning of the policy; and (3) the so-called "sisterhood" exclusion (Exclusion N of the policy) was applicable.[2] We agree. Since we uphold the validity of these three defenses, we do not reach other defenses asserted in defendant's answer.

After both parties filed motions for summary judgment, then District Judge Tone issued an unreported memorandum opinion denying plaintiff's motion and granting defendant's, holding that "Midland's claim is essentially one for loss of investment, loss of anticipated profits, and loss of goodwill" and that damages from injury to such intangible property rights were excluded from the policy's coverage. In a supplemental opinion, he also held that the "sisterhood" exclusion (N) precluded coverage. He did not determine whether there was an "occurrence" within the meaning of the policy. We affirm.

In pertinent part, the policy covers plaintiff's liability for "property damage" which is "caused by an occurrence." In our judgment, the district court correctly held that any sums plaintiff may be obligated to pay as a result of the Midland action will not be a result of "property damage" as defined in the policy. The definition is: "injury to or destruction of tangible property." As Judge Tone rightly observed, Midland is claiming damages for injury to intangible property,[3] so that coverage does not exist under the policy. See St. Paul Fire & Marine Ins. Co. v. Northern Grain Co., 365 F.2d 361, 367 (8th Cir. 1966); Hartford Accident & Indemnity Co. v. Case Foundation Co., 10 Ill.App.3d 115, 294 N.E.2d 7 (1st Dist. 1973). Since this is a diversity case, Illinois rules on choice of law are applicable because that is the state where the district court is located. Illinois choice of law rules dictate the choice of Ohio law, as the state wherein the insurance contract was apparently executed. However, plaintiff has cited no applicable authority from Ohio that is contrary to the Hartford case.[4]

Using an inventive, if far-fetched, approach, plaintiff contends in this Court, that there was "property damage" to the finished product, the racket, by reason of the incorporation of the allegedly defective part, the frame. We do not think that the mere inclusion of a defective component, where no physical harm to the other parts results therefrom, constitutes "property damage" within the meaning of the policy. For example, if an automobile crash results from the failure of its defective tire, the defective component can be said to have caused "property damage" to the finished product. If, however, some of the tires purchased by the automobile manufacturer are found to be defective and the manufacturer therefore with-

2. The "sisterhood" exclusion is discussed in R. Elliott, New Comprehensive General Liability Policy, Practicing Law Institute XII–QQ–9 (1967).

3. See Paragraph 10 of Midland's complaint quoted supra.

4. The non-Ohio cases relied upon by plaintiff to show that there was property damage are inapposite because they involve policy provisions differing from the one before us.

draws its cars from the market, there has not been "injury to or destruction of tangible property," which is (as noted) the definition of "property damage" in the policy. We also reject plaintiff's contention that because Midland's complaint implicitly seeks compensation for the loss of use of its machinery for finishing the rackets idled by the alleged lack of quality frames, the suit is one for "property damage." Idled machinery is not injured or destroyed tangible property and, therefore, there is no "property damage" within the coverage of the policy.

■ Secondly, Exclusion N of the policy applies, as held in the district court's second memorandum opinion. That clause specifically excludes:

> "*damages claimed for the withdrawal,* inspection, repair, replacement or loss of use *of the Named Insured's products* or work completed by or for the Named Insured *or of any property of which such products or work form a part, if such products, work or property are withdrawn from the market or from use because of any known or suspected defect or deficiency therein*" (emphasis added).

Here Midland withdrew the tennis rackets from the market because the frames "were not porosity and oxide free, were not of optimum metal density and were not free of shrinkage." As the district judge observed, Exclusion N was "designed to exclude from coverage costs incurred by the withdrawal of goods from the market, the situation presented here." (See emphasized language of Exclusion N above.) Under the language of Exclusion N, it is immaterial that the withdrawal was not by the insured.[5]

■ Finally, although it was not a basis for the district court's decision, we think it is appropriate to note that the damages claimed by Midland were not the result of "an occurrence" as required by the terms of the policy. An "occurrence" is defined as "an accident, including injurious exposure to conditions, which results, during the policy period, in bodily injury or property damage neither expected nor intended from the standpoint of the Insured." Because Midland's complaint controls the question whether defendant must accept the tender of defense, it is of course immaterial that plaintiff's declaratory judgment complaint characterizes Midland's suit as "for property damage arising from an occurrence of alleged negligent manufacture" of aluminum tennis racket frames by plaintiff. If one of the completed rackets had broken during normal use due to the defective frames and a person or an item of property had been harmed, it seems clear that there would have been an "occurrence" and that defendant would have had responsibility for plaintiff's defense. Such a situation would clearly be "an accident." The policy does not, however, cover "an occurrence of alleged negligent manufacture"; it covers negligent manufacture that results in "an occurrence." Plaintiff's strained interpretations aside, the Midland complaint would not support a reasonable belief that Midland's damages were the result of "an occurrence" within the definition of the policy in suit.

Plaintiff relies upon *Maurice Pincoffs Co. v. St. Paul Fire & Marine Ins. Co.,* 447 F.2d 204 (5th Cir. 1971), to support its argument that there was an "occurrence" under defendant's policy. However, in that case, the parties did not disagree on whether an occurrence had in fact transpired. The question before the court was whether there was one occurrence of liability or eight separate occurrences under the policy. The *Pincoffs* case is inapplicable because it did not focus upon the issue before us.

■ Because it was not raised below, we do not consider plaintiff's argument that since Midland's suit against plaintiff had not yet been tried, summary judgment in this case was premature.

Judgment affirmed.

---

5. To the extent that Parker Products, Inc. v. Gulf Insurance Co., 486 S.W.2d 610 (Tex.Civ. App.1972), is to the contrary, we agree with the dissenting opinion. This point was not discussed when the *Parker Products* case reached the Supreme Court of Texas. See 498 S.W.2d 676 (1973).