CONTINENTAL INSURANCE COMPANY
*v.* David A. HODGES and Kaneaster
HODGES Jr.

75-340                                    534 S.W. 2d 764

Opinion delivered April 5, 1976

*Barrett, Wheatley, Smith & Deacon,* for appellant.

*George Proctor,* for appellees.

CONLEY BYRD, Justice. The sole issue on this appeal by Continental Insurance Company is whether, under the terms of a liability insurance policy, it is obligated to defend appellees David A. Hodges and Kaneaster Hodges, Jr. in an action brought against them for allegedly casting surface water upon their neighbor's property.

The policy provides:

"The company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of
A. bodily injury or
B. property damage
to which this insurance applies, caused by an occurrence, . . . "

The word "occurrence" is defined in the policy as:

"An accident . . . which results . . . in property damage neither expected nor intended from the standpoint of the insured."

The chancery court action brought by Glen Odglen, et al, against appellees alleges that the appellees, and/or their tenants, have improved their property so as to greatly increase the total volume of surface water thereon by pumping water from beneath the surface for rice production; that this water was drained into a small drainage ditch crossing appellees' land thereby casting the water in a body upon the lands belonging to Odglen, et al; that substantial damage was done to the growing crops of Odglen, et al; and that damages and a temporary injunction should be granted.

The term "accident" is not defined in the policy, but as pointed out in 44 Am. Jur. 2d *Insurance* § 1219 (1969), "The definition that has usually been adopted by the courts is that an accident is an event that takes place without one's foresight or expectation — an event that proceeds from an unknown cause, or is an unusual effect of a known cause, and therefore not expected." The cases relied upon by appellees

generally support this statement. See *City of Kimball* v. *St. Paul Fire & Marine Ins. Co.*, 190 Neb. 152, 206 N.W. 2d 632 (1973), *Otterman* v. *Union Mutual Fire Ins. Co.*, 130 Vt. 636, 298 A. 2d 547 (1972), and *Cross* v. *Zurich General Accident & Liability Ins. Co.*, 184 F. 2d 609 (7th Cir. 1950).

In the *City of Kimball* case, *supra*, by a vote of 4 to 3 the Nebraska Court upheld a finding that an accident was involved where the seepage of the sewage from the city's lagoon occurred because of the negligence of the city's employees in failing to discover some seismograph holes before the lagoon was built. Of course, under the complaint filed against appellees by Odglen no negligence is charged or suggested.

In the case of *Otterman* v. *Union Mutual Fire Ins. Co.*, *supra*, one Kennelly, a man with a history of mental illness, during a tantrum, fired a shot into a dark room that passed through a wall and struck an officer in the next room. In upholding the trial court's finding that the shooting was an occurrence under a policy identical to the one before us, the Vermont Court laid much stress upon the findings of the trial court that because of his mental illness Kennelly did not intentionally shoot the officer and that Kennelly did not know that the officer was in the house.

The case of *Gross* v. *Zurich General Accident & Liability Ins. Co.*, *supra*, involved acid damages to windows that occurred during the cleaning of a building with acid. The undisputed proof showed that the insured used the customary method to protect the windows from the acid but that the damage occurred through the negligence of the insured's employees in applying the customary method for protecting the windows. In holding that the damage claims were accidental within the terms of the policy, the court said:

> "The basis for the decision of the trial court was that plaintiffs intentionally used hydrofluoric acid in the solution and failed to take the precaution of covering the windows with grease or heavy paper. But failure to take a proper or effective precaution does not prove intent to damage. Plaintiffs may have been negligent in not keeping sufficient water on the windows, but the very fact that water was applied to each window negatives any

idea that plaintiff intended to damage same. And lacking such intent, the damage was accidental, even though caused by negligence."

Under the allegations of Odglen's complaint against appellees, the damages alleged could not have taken place without foresight or expectation and did not involve any negligence on the part of appellees. Nor can it be said that the damages alleged proceeded from an unknown cause or were an unusual effect of a known cause. Rather the complaint states that appellees, after pumping the water onto their lands for use in irrigating the rice crops, drained it into a ditch crossing their lands and cast it upon the lands of Odglen, et al [inferentially by gravity]. It follows that the trial court erred in holding that the appellees' conduct constituted "an accident" within any reasonable definition of the word, see *Proctor Seed & Feed Co.* v. *Hartford Ins.*, 253 Ark. 1105, 491 S.W. 2d 62 (1973).

Reversed and dismissed.

HARRIS, C.J., dissents.

CARLETON HARRIS, Chief Justice, dissenting. The basis for the majority holding appears to be that the Odglen complaint against Hodges does not explicitly allege that negligence caused the flooding. The majority opinion does not analyze this point, but merely states that "the damages alleged could not have taken place without foresight or expectation and did not involve any negligence on the part of appellees." Yet nowhere in the Odglen complaint is it alleged that appellees acted willfully, *i.e.*, that appellees knew that the drainage ditch was inadequate to remove the water without flooding adjacent land. Without such specific charges, it hardly seems reasonable to *presume* willfulness, as the majority does, since it is improbable appellees would, in my view, have deliberately inundated the adjoining fields. The record certainly contains no support for such a presumption.

The great weight of opinion with respect to exclusions such as the one at issue is that the insurer is obligated under the policy unless it is shown that the insured party intended

not merely his act, but the injurious consequences of that act. The Pennsylvania Supreme Court summarized this rule in *Eisenman* v. *Hornberger,* 438 Pa. 46, 264 A. 2d 673:

> . . . "[T]he vast majority of courts which have considered such a provision have reached the conclusion that before the insurer may validly disclaim liability, it must be shown that the insured intended by his act to produce the damage which did in fact occur. Annot. 2 A.L.R. 2d 1238 (1965). We subscribe to such a view. There is a very real distinction between intending an act and intending a result and the policy exclusion addresses itself quite clearly to the latter."

In *Grand River Lime Company* v. *Ohio Casualty Insurance Company,* 32 Ohio App. 2d 178, 289 N.E. 2d 360, 200 residents had brought a class action against a nearby manufacturer, alleging damages from nuisance and trespass caused by emissions of industrial wastes and air pollution. The manufacturer then brought the *Grand River* suit against its insurer to compel the insurer to defend the class action. As in the instant case, the policy insured against damages caused by "occurrences," the latter term defined elsewhere in the policy as an "accident." The Ohio court held that the insurer was obligated to defend under the policy, stating:

> "We adopt the argument as propounded by the plaintiff that the word 'occurrence' is much broader than the term 'accident.' Such proposition is well stated in Aerial Agriculture Service v. Till (N.D. Miss. 1962), 207 F. Supp. 50, 57:
>
>> 'To begin with, the word "occurrence," to the lay mind, as well as to the judicial mind, has a meaning much broader than the word "accident." As these words are generally understood, accident means something that must have come about or happened in a certain way, while occurrence means something that happened or came about in any way. Thus *accident* is a special type of *occurrence,* but occurrence goes beyond such special confines and, while including accident, it encompasses many other situations as well.'

"We further adopt the plaintiff's proposition to the effect that while the activity which produced the alleged damage may be fully intended, and the residual results fully known, the damage itself may be completely unexpected and unintended.

"As an example, the plaintiff Grand River was certainly aware of its particular manufacturing activity, and was undoubtedly aware of the residual emission of smoke, dust, etc., but yet it is quite questionable whether Grand River expected or intended the damaging results to the property owners, at least in the sense that the policy uses such terms."

Actually, I consider that some of the cases cited by the majority support my view, but at any rate, it is apparent that I would affirm the judgment of the trial court.[1]

---

[1]While it has no probative value in the question before us, it is interesting to note that the trial court found for defendants (including appellees) in this case and dismissed the complaint of Odglen.