## GEURIN CONTRACTORS, INC. *v.* BITUMINOUS CASUALTY CORPORATION

CA 81-382        636 S.W.2d 638

Court of Appeals of Arkansas
Opinion delivered June 23, 1982
[Supplemental Opinion on Denial of Rehearing August 25, 1982.*]

---

*636 S.W.2d 645.

230

*Highsmith, Gregg, Hart & Farris,* by: *John C. Gregg,* for appellant.

*Bailey, Trimble, Pence & Sellars,* by: *Rick Sellars,* for appellee.

LAWSON CLONINGER, Judge. On February 22, 1978, John Reaves filed suit against Geurin Contractors for the alleged negligent performance of a contract between Geurin and the Arkansas State Highway Department for the paving of Highway No. 67 in Jackson County. Mr. Reaves alleged that because the road was closed in front of his store, he was damaged in the amount of $22,227.00 in lost profits. Geurin Contractors notified its insurance carrier, Bituminous Casualty Corporation, of the litigation and demanded a defense to the civil action. Bituminous notified Geurin that it would provide a defense to the cause of action under a reservation of rights and advised appellant to employ its own attorney at its own expense in the defense of the lawsuit. Bituminous, after trial but before entry of the judgment, advised Geurin that no coverage was available to it under the policy and that Bituminous would take no further action or provide any further legal defense. Judgment was entered against Geurin for $22,227.00. Geurin appealed the decision and the verdict was affirmed on October 15, 1980.

On April 7, 1980, Geurin sued on the policy of insurance seeking reimbursement from Bituminous for the amount spent in satisfaction of the judgment, payment of costs, and attorneys' fees, plus penalty and costs. On May 7, 1981, the trial court dismissed Geurin's complaint with prejudice. Geurin now brings this appeal.

This case is primarily one of interpretation of an insurance policy. Appellant's sole point for reversal is that the circuit court erred in dismissing the complaint of Geurin because it misconstrued the insurance policy.

The construction and legal effect of written contracts are matters to be determined by the court, not by the jury, except when the meaning of the language depends upon disputed extrinsic evidence. *Southall* v. *Farm Bureau Mutual Insurance Co.,* 276 Ark. 58, 632 S.W.2d 420 (1982). It

is a question of law and not one of fact. *Arkansas Rock and Gravel Co. v. Chris-T-Emulsion Co.,* 259 Ark. 807, 536 S.W.2d 724 (1976). Under Arkansas law insurance contract language is to be given its common and ordinary meaning under the situation and words of limitation are to be construed strictly against the insurer. *Courson v. Maryland Casualty Co.,* 475 F.2d 1030 (8th Cir. 1973). Courts are required to strictly interpret exclusions to insurance coverage and to resolve all reasonable doubt in favor of an insured who had no part in the preparation of the contract. *State Farm Mutual Automobile Insurance Co. v. Trailer,* 263 Ark. 92, 562 S.W.2d 595 (1978). Insurance policies should always be construed most favorably to the insured and against the insurer. *Ritchie Grocery Co. v. Aetna Casualty Insurance Co.,* 425 F.2d 499 (8th Cir. 1970).

Appellant first contends that the situation which resulted in the claim by John Reaves constituted an "occurrence" within the meaning of the policy of insurance. Under the insurance policy, "occurrence" is defined as:

An accident, including continuous repeated exposure to conditions, which results in bodily injury or property damage, neither expected nor intended from the standpoint of insured.

In *Ohio Casualty Insurance Co. v. Terrace Enterprises, Inc.,* 260 N.W.2d 450 (Minn. 1977), the Supreme Court of Minnesota held that the settling of an apartment building caused by Terrace Enterprises' failure to backfill adequately and to adequately protect the soil and concrete from the cold was an "occurrence" within the meaning of the policy. The insurance policy provided by Ohio Casualty Co. contained essentially the same definition for "occurrence" as is provided for in the policy by Bituminous Casualty Corporation. Similarly, in *Grand River Lime Co. v. Ohio Casualty Insurance Co.,* 289 N.E.2d 360 (Ohio 1972) the Court of Appeals of Ohio held that alleged nuisance and trespass by damage-causing emission of industrial wastes into the air in the course of insured's manufacturing operation could

constitute an "occurrence" within the meaning of the policy, but knowing and intentional malfeasance in such emission of wastes could not. The court reversed a summary judgment in favor of the insurer, Ohio Casualty Insurance Company. The court went on to say that the word "occurrence" is much broader than the term "accident". Furthermore, the court held that the word "occurrence" should not be interpreted in a sudden or momentary sense, but permit such term to encompass a period of time.

In another case, *Elco Industries, Inc.* v. *Liberty Mutual Insurance Co.*, 414 N.E.2d 41 (Ill. 1980), the Appellate Court of Illinois held that the installation of defective governor-regulating pins installed into engines by the insured, necessitating their removal and replacement, was an "occurrence" under the terms of the policy. The Court of Appeals of Washington held in *Gruol Construction Co.* v. *Insurance Co. of North America*, 524 P.2d 427 (Wash. 1974) that substantial evidence supported the trial court's finding that damage to a building caused by dry rot which resulted from the insured's action of piling dirt against boxsills of the apartment building by backfilling during construction came within the definition of "occurrence" as used in the policy.

There is one Arkansas case which construes the meaning of "occurrence", *Continental Insurance Co.* v. *Hodges*, 259 Ark. 541, 534 S.W.2d 764 (1976). In that case the sole issue on appeal was whether Continental Insurance Company was obligated to defend the Hodgeses in an action brought against them for allegedly casting surface water upon their neighbor's property. The word "occurrence" was defined in the policy as:

> An accident . . . which results . . . in property damage neither expected nor intended from the standpoint of the insured.

The trial court held in favor of the Hodgeses. On appeal, the Arkansas Supreme Court reversed the trial

judge's decision. The court held that the damages alleged could not have taken place without foresight or expectation and did not involve any negligence on the part of appellees. Nor could it be said that the damages alleged proceeded from an unknown cause or were an unusual effect of a known cause within the meaning of "accident." Rather, the court recognized that the complaint stated that appellees, after pumping the water onto their lands for use of irrigating the rice crops, drained it into a ditch crossing their land and cast it upon the lands of their neighbor. It followed that the trial court erred in holding that appellees' conduct constituted "an accident" within any reasonable definition of the word.

In applying the above stated rules to the facts of this case, we hold that the damage which resulted in the John Reaves claim was an "occurrence" within the meaning of the policy. The key issue in determining whether an "occurrence" is within the coverage of an insurance policy such as this is whether the occurrence was expected or intended by the insured. See *Continental Insurance Co., supra.* In the instant case, Geurin Contractors began to work on the portion of Highway 384 in front of John Reaves' store on July 13, 1977. Geurin specifically chose to do the work during the summer months to avoid potential wet weather problems. They first began grading operations on the road. They encountered soil cement during the grading operations and the highway department made the decision that the soil cement had to be removed. Geurin began removing the soil cement at the direction of the highway department. When the soil cement was removed it was discovered that the underlying soil was unstable and not suitable for a road bed. The highway department then made the decision that the unstable soil would have to be removed and refilled with stable material. This is called undercutting and consists of a contractor digging out the unstable soil and moving it, then refilling the area with the dry soil sufficient to stabilize the road area. During these operations, the road was kept open by closing one-half of the road and leaving the other half open.

The undercut area of Highway 384 was partially backfilled by Friday evening, July 15. On Friday night a

heavy rain occurred which filled the undercut area with water. The road was closed the following day with the approval of the highway department. It rained every day thereafter through Thursday, July 21. The road was closed through July 22. During this period, there was evidence to show that attempts were made to provide access to Reaves' store by Geurin and the highway department.

Based upon the above evidence, we hold that the occurrence which brought about the damage to Reaves' store was not expected nor intended by the insured and comes within the purview of an occurrence within the meaning of the policy.

Appellant next argues that the court erred in holding that even if there was coverage, these damages were specifically excluded from coverage under the policy of insurance. The policy provides in pertinent part:

> The company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of . . . the property damage to which this insurance applies, caused by an occurrence.

Property damage in the policy is defined as:

> (1) Physical injury to or destruction of tangible property which occurs during the policy period, including the loss of use thereof at any time resulting therefrom, or
> (2) Loss of use of tangible property which has not been physically injured or destroyed provided such loss of use is caused by an occurrence during the policy period.

In *Elco Industries, Inc.* v. *Liberty Mutual, supra,* the court held that sums which the insured paid in settlement of a buyer's action after the buyer was forced to recall engines and remove defective regulating pins were the result of

property damage caused by an occurrence as defined by the policy, and, therefore, the damage was covered by the policy. The court recognized that a majority position holds that "property damage" includes tangible property which has been diminished in value or made useless irrespective of any actual physical injury to the tangible property. Furthermore, in *Elco*, the policy defined "property damage" as injury or destruction of tangible property.

In the instant case, there is a much broader definition of "property damage" than there was in *Elco*. The policy defines "property damage" as physical injury to or destruction of tangible property, *including* loss of use of the property. Furthermore, it defines "property damage" as loss of use of tangible property which has not been physically injured or destroyed provided such loss of use is caused by an occurrence. As was stated earlier, the damage which is the subject of this lawsuit comes within the definition of "occurrence" within the meaning of the policy. Therefore, we find that it also comes within the meaning of "property damage" as defined in the policy.

The final exclusion relied upon by Bituminous is exclusion (m) which states in pertinent part:

> This insurance does not apply:
> (m) To loss of use of tangible property which has not been physically injured or destroyed resulting from (1) a delay in or lack of performance by or on behalf of the named insured of any contract or agreement, . . . .

Appellee argues that Geurin delayed in performing its highway contract which caused customers to be unable to reach Reaves' store. Furthermore, appellee argues that there is ample evidence in the record to show that Geurin was performing its contract negligently and that this evidence alone is sufficient to raise the applicability of exclusion (m). We find nothing in exclusion (m) to show that negligent performance of the contract makes the exclusion operative. The exclusion only becomes operative if there has been a

delay in or lack of performance by the insured. Appellee makes the bare statement that Geurin delayed in performing its contract with the highway department. There was no evidence in the record to support such an assertion. In fact, all of the evidence indicates that Geurin was doing everything it possibly could to meet its obligations under the contract with the highway department. In fact, most of Geurin's work during the period in question was done at the express direction of the highway department, including the closing of Highway 384 in front of Reaves' store. Therefore, we hold that the exclusion is inapplicable to the facts of this case. Insurance policies should always be construed most favorably to the insured and against the insurer. *Ritchie Grocery Co., supra.* Courts are required to strictly interpret exclusions to insurance coverage and to resolve all reasonable doubt in favor of the insured. *State Farm Mutual Automobile Insurance Co., supra.* There was never any allegation of delay of performance on the part of Geurin in the John Reaves claim. In fact, the claim was tried on a pure negligence theory to the jury and there was no evidence as to any breach of contract or delay of performance in that proceeding. In this proceeding, there was also no evidence presented to show that Geurin delayed in its performance of its contract with the highway department. We hold that the exclusion is inapplicable.

This case is reversed and remanded to the trial court with directions to set a reasonable attorney's fee for Geurin's attorneys for the defense of the John Reaves claim and to enter judgment for Geurin.

GLAZE, J., dissents.

TOM GLAZE, Justice, dissenting. I respectfully dissent from the majority's decision and I will discuss each point in the same order as the majority considered it.

I.

THE JOHN REAVES CLAIM AND RESULTING LITIGATION IN JACKSON COUNTY CIRCUIT

COURT CONSTITUTED AN OCCURRENCE WITHIN
THE MEANING OF THE POLICY OF INSURANCE.

The majority held that the damage suffered by John
Reaves was an "occurrence" within the meaning of the
policy because it was neither expected nor intended by the
insured, Geurin Contractors. The insurance policy defined
"occurrence" as follows:

> "[O]ccurrence" means an accident, including con-
> tinuous or repeated exposure to conditions, which
> results in bodily injury or property damage neither
> expected nor intended from the standpoint of the
> insured.

The key word in the definition above is "accident."
Although the insurance policy does not define that word, the
Court in *Continental Insurance Company* v. *Hodges,* 259
Ark. 541, 534 S.W.2d 764 (1976), defined it as follows:

> The definition that has usually been adopted by the
> courts is that *an accident is an event that takes place
> without one's foresight or expectation — an event that
> proceeds from an unknown cause, or is an unusual
> effect of a known cause, and therefore not expected.*
> [Citing 44 Am. Jur. 2d *Insurance,* § 1219 (1969)].
> [Emphasis supplied.]

Consideration of the meaning of "occurrence" is in-
complete without a concurrent consideration of the meaning
of "accident." Whether an event constitutes an "accident" is
determined more by the effect or result of the event, not by
the intent of the insured. Thus, although Geurin did not
intend to damage Mr. Reaves' business, the precise damage
which he suffered, *viz.* loss of business, was foreseeable in
view of the relative location of the store to the highway
construction.

The majority outlined the following so-called "unex-
pected" and "unintended" events which it opines consti-

tuted an "occurrence" and resulted in the store's becoming inaccessible to Reaves' customers: (1) finding soil cement during the grading operations; (2) finding the underlying soil to be unstable and not suitable for a road bed; (3) getting rain during the course of the construction.

Geurin's contract with the state highway department required him to remove the old highway surface and to replace it with a new surface. The contract also required the company to provide and maintain temporary access to businesses and parking lots along the construction route. The problems which Geurin encountered delayed completion of the job. Mr. Reaves was damaged by Geurin's failure to provide adequate access to the grocery store. Geurin maintains that he neither intended nor expected the resulting damage and is therefore within the terms of the policy. Intention, however, is not the controlling factor in applying the policy provision. If the occurrence were an *accident* which resulted in property damage that was either expected or intended by the insured, the provision applies and there is no coverage. The real question here is whether the delays and resulting loss to Mr. Reaves were caused by events which were normal, foreseeable and to be anticipated by a construction company. Rain is not so unlikely an event that it is unexpected by a highway contractor. Although Geurin may not, in fact, have expected rain, it is reasonably foreseeable in Arkansas that at some time during a construction project rain will occur. Within the definition of "accident" provided by this Court, rain which could delay a construction project is neither an event that proceeds from an unknown cause nor an unusual effect of a known cause, and therefore unexpected.

No evidence was presented to indicate that finding a spongy subsurface was unusual or unexpected. In fact, the testimony of Mr. W. A. Bigham, former Superintendent for Public Works for the City of Newport, was to the contrary. Mr. Bigham testified that he was not surprised that the subsurface was "wet and mucky" because he was familiar with it. He explained that it is in a low lying, easily flooded

area, and "in fact, the City of Newport is kind of in a duck nest, easy to flood anywhere."

Given the wording of the contract provision which defines "occurrence" and the testimony below, the evidence is overwhelmingly in support of the appellee's position. The facts indicate that the circumstances which led to Mr. Reaves' lost profits were foreseeable and were not unusual for one in Geurin's position.

The majority cites cases from other jurisdictions which have absolutely no application to or bearing upon the case at bar. For example, in *Ohio Casualty Insurance Company* v. *Terrace Enterprises, Inc.*, 260 N.W.2d 450 (Minn. 1977), the Court determined that faulty construction of an apartment building was an "occurrence" under the terms of the policy. The damage which resulted when the building settled was the direct result of the work the contractor performed in constructing the apartments. The case at bar would only be comparable if the damage had been to the highway which the contractor built rather than the lost profits Mr. Reaves suffered in his business.

In *Grand River Lime Company* v. *Ohio Casualty Insurance Company*, 289 N.E.2d 360 (Ohio Ct. App. 1972), a class action suit alleging damage and personal injury to some two hundred plaintiffs, the primary question was whether the insurer was obligated to defend the insured. The Court held the company not liable to defend against allegations of "knowledge and willful intent of the defendant" because the definition of "occurrence" in the policy applied only to accidents "neither expected nor intended by the insured." However, allegations of nuisance, trespass or negligence, according to the Court, fell within the policy provisions. Unlike the case of *Grand River Lime Company*, here appellee does not allege that Geurin willfully or intentionally caused damage to Mr. Reaves' property. Rather, appellee contended that the resultant damage was not beyond the foresight or expectation of Geurin. The policy provision in issue in *Grand River Lime Company*

simply is not the same as the one under consideration here. The Ohio case is so far off point on its facts that one must stretch his imagination to compare that Court's holding and facts to the instant case.

In *Elco Industries, Inc.* v. *Liberty Mutual Insurance Company,* 90 Ill. App. 3d 1106, 414 N.E.2d 41 (1980), cited by the majority, manufactured goods were recalled because of a defective component part made by the insured. The insured paid a settlement to the buyer because the insured's failure to manufacture the part according to the buyer's specifications resulted in the buyer's having to remove, repair and replace the parts. The insurance company maintained that the installation of defective parts was not an "occurrence" under the terms of the policy. The Court held that there *was* an "occurrence," pointing out "the word 'accident' should not be construed to exclude claims involving negligence or breach of warranty; otherwise the insured is afforded little or no protection." *Id.* at 44. Actually, the holding in *Elco Industries* is compatible with appellee's contentions here. Appellee does not contend that claims involving negligence which result in an "occurrence" ought to be excluded from coverage, but only that there was no "occurrence" under the terms of the policy in the instant case.

The majority also cites *Gruol Construction Company* v. *Insurance Company of North America,* 524 P.2d 427 (Wash. App. 1974), wherein the Court found that the damage caused by dry rot in an apartment building was not foreseeable. The Court indicated that the insurer would not have been liable were the damage "not unusual, unexpected or unforeseen and, therefore, not an 'accident.'" The facts in *Gruol* are easily distinguishable from the instant case. Here, the damage caused by the store's being inaccessible, *i.e.,* loss of business, was foreseeable.

Reviewing the cases from other states which the majority cites, I do not find them persuasive in holding that there was an "occurrence" under the terms of the policy. Although they do interpret the word "occurrence," the fact

situations are so different that the cases are inapposite to the facts and issues before us.

## II.

## THE JOHN REAVES CLAIM AND RESULTING LITIGATION IN JACKSON COUNTY CIRCUIT COURT WAS NOT SPECIFICALLY EXCLUDED FROM COVERAGE UNDER THE POLICY.

If there was no occurrence under the terms of the policy, then by the terms of the policy, the appellee is not obligated to pay. The policy provides coverage for property damage under Coverage B, which reads in pertinent part:

> The company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of . . . property damage to which this insurance applies, caused by an occurrence.

Without an "occurrence" no property damage is covered by the insurance policy.

Even if there was an "occurrence" as the majority held, the damages which Mr. Reaves suffered are excluded by other policy provisions. The majority strained to find "property damage" under the terms of the policy, even though the damage was not physical damage to tangible property. Instead, the damages here involved lost profits due to the inaccessibility by customers to Mr. Reaves' store.

By definition, "property damage" under the policy in question is "[p]hysical injury to or destruction of *tangible* property . . . including the loss of use thereof at any time resulting therefrom." The only allegation of destruction of tangible property was the claim for meats and produce which spoiled because customers did not come to the store. Mr. Reaves' premises were not physically damaged.

"Property damage" is also defined in the policy as "loss of use of tangible property which has not been physically injured or destroyed provided such loss of use is caused by an occurrence . . . . " No evidence exists that Mr. Reaves was unable to use his store during the period of construction or that he was forced to close as a result of an inability to use his property.

The only element of damages submitted to the jury when Mr. Reaves brought action against Geurin was for loss of profits, an intangible property right. Appellant cites *Hamilton Die Cast, Inc.* v. *United States Fidelity and Guaranty Company,* 508 F.2d 417 (7th Cir. 1975), to support the contention that "actual injury or damage . . . to tangible property resulting in loss of *intangibles*" is not excluded under the terms of the policy. Yet, in the case at bar, no physical injury or damage occurred to Mr. Reaves' store; the injury was to his pocketbook. In the *Hamilton Die Cast* case, the Court found that the losses which Midland claimed were intangible property rights, "loss of investment, loss of anticipated profits, and loss of goodwill," *id.* at 419, exactly the types of losses which Mr. Reaves claimed. Reaves maintained that he lost profits from his business while his customers could not easily get to his store and that he had to spend sums of money to retrieve his steady customers whom he had lost to his competition while the road construction was underway. On these facts, I fail to see how the majority could find that "property damage" occurred within the terms of the insurance policy.

The last exclusion which the majority held inapplicable to the case at bar is paragraph (m) of the insurance policy. It provides that the policy does not cover losses of tangible property not physically injured or destroyed resulting from a delay in or lack of performance by the insured. The exclusion is clear in its terms. Although insurance policies are to be construed most favorably to the insured and against the insurer, *Ritchie Grocer Company* v. *Aetna Casualty & Surety Company,* 426 F.2d 499 (8th Cir. 1970), and all reasonable doubts are to be resolved in

favor of an insured who had no part in preparing the contract, *State Farm Mutual Automobile Insurance Company* v. *Traylor*, 263 Ark. 92, 562 S.W.2d 595 (1978), when language is clear and unambiguous, the Court is bound to enforce the contract. In *Southern Farm Bureau Casualty Insurance Company* v. *Williams*, 260 Ark. 659, 543 S.W.2d 467 (1976), the Arkansas Supreme Court said:

> It is unnecessary to resort to rules of construction in order to ascertain the meaning of an insurance policy when no ambiguity exists. . . . The terms of an insurance contract are not to be rewritten under the rule of strict construction against the company issuing it so as to bind the insurer to a risk which is plainly excluded and for which it was not paid.

*Id.* at 664, 543 S.W.2d at 470.

The testimony at trial was to the effect that Mr. Reaves' losses were the result of the time involved in resurfacing the highway. The reasons for the delay in completing the job were finding an unstable subsurface and having rain for several days in a row, which prevented the workers from proceeding. The language in exclusion (m) does not require that a delay be intentional — only that a delay occur. It is not disputed that appellant's job performance was delayed, and therefore the insurance coverage was excludable on these facts.

The trial court's judgment should not be reversed.

Supplemental Opinion on Denial of Rehearing
delivered August 25, 1982

636 S.W.2d 645

Lawson Cloninger, Judge. Appellee, Bituminous Casualty Corporation, filed a petition for rehearing in this case requesting clarification of this court's decision to determine appellee's obligation to appellant. We remand the case to the trial court with directions to enter judgment for Geurin for $22,227.00, the amount of the Reaves judg-

ment, and directing the trial judge to (1) determine whether Geurin is entitled to an attorney's fee in the defense of the Reaves claim, and to fix the amount of the fee, if any, (2) fix a reasonable attorney's fee for Geurin in the appeal of the Reaves case, the trial of the instant case, and the appeal in the instant case, and (3) fix the amount of the costs, expenses, and interest due Geurin in both trials and both appeals.

GLAZE, J., dissents.

TOM GLAZE, Judge, dissenting. I dissent. Since I disagree that appellant is entitled to damages under the insurance policy, I necessarily disagree that it is entitled to attorneys' fees.