# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

October 22, 2010

No. 09-11075

Lyle W. Cayce
Clerk

ADVANCED ENVIRONMENTAL RECYCLING TECHNOLOGIES INC.,

Plaintiff - Appellant

v.

AMERICAN INTERNATIONAL SPECIALTY LINES INSURANCE CO.,

Defendant - Appellee

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 3:08-CV-837

Before CLEMENT, SOUTHWICK, and HAYNES, Circuit Judges.

PER CURIAM:[*]

Advanced Environmental Recycling Technologies Inc. (AERT) appeals the district court's grant of summary judgment to AERT's insurer, American International Specialty Lines Insurance Co. (AISLIC). We AFFIRM.

## I. Facts and Background

AERT manufactures recycled wood composite building products, including decking and other exterior products. AERT was named as a defendant in two separate class action lawsuits, consolidated in the United States District Court

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

for the Western District of Washington ("the Mold Lawsuits"). In the Mold Lawsuits, AERT customers sought damages based on allegations that AERT's ChoiceDek products were vulnerable to mold, mildew, and fungal growth. The claims were based upon allegations that AERT's products were defectively designed and manufactured, not suitable for their intended use, and not suitable for use as they were warranted and represented. The customers further alleged that AERT had knowledge of those defects. Significantly, the only damage alleged in the Mold Lawsuits is to the AERT products themselves and not to any additional property or to people.

AISLIC issued to AERT consecutive policies providing umbrella general liability coverage insuring operations in Arkansas, Texas, and Louisiana ("Umbrella Policies") in addition to policies providing underlying commercial general liability insurance ("Primary Policies"). AERT tendered its defense in the Mold Lawsuits to AISLIC, which declined to defend.

The Umbrella Policies provided two kinds of coverage to AERT in addition to the Primary Policies: "Coverage A," excess follow-form liability coverage from the Primary Policies for property damage, and "Coverage B," coverage against damages that AERT was obligated to pay because of bodily injury or property damage caused by an "occurrence" *not* covered by the Primary Policies. The Umbrella Policies define "occurrence" as "an accident, including continuous or repeated exposure to substantially the same generally harmful conditions." The Umbrella Policies also provided for a variety of express exclusions from coverage.

AERT filed this lawsuit asking for a declaratory judgment that AISLIC must defend the Mold Lawsuits under Coverage B of the Umbrella Policies and seeking damages under a Texas statute mandating prompt payments of certain insurance claims, TEX. INS. CODE §§ 542.051–.061 ("Texas Prompt Pay Statute"). The parties filed cross-motions for summary judgment. AISLIC's motion also included a request for summary judgment on the issue of whether AISLIC had

a duty to indemnify AERT. While the motions were pending, the Mold Lawsuits settled, and AERT amended its complaint to include a request for indemnity for the amounts paid in settlement. The district court granted AISLIC's motion for summary judgment and simultaneously entered a final judgment in AISLIC's favor, dismissing all of AERT's claims with prejudice. AERT timely appealed.

## II.  Standard of Review

We review a district court's grant of summary judgment *de novo* and apply the same standard as the district court. *Hill v. Carroll County, Miss.*, 587 F.3d 230, 233 (5th Cir. 2009). We "view all disputed facts and inferences in the light most favorable to the non-movant." *Id*. Summary judgment is properly granted if the record shows "that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). We will accordingly affirm summary judgment where the non-movant "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

## III.  Discussion

On appeal, AERT contends that the district court erred in holding that AISLIC had no duty to defend because (1) AERT alleged an "occurrence" under the Umbrella Policies, (2) the court improperly concluded that the "product recall" exclusion was relevant, and (3) no other exclusions precluded the duty to defend. AERT also suggests error in the district court's choice of law. Finally, AERT contends that summary judgment should not have been granted on its claim for indemnity. As a result of these arguments, AERT also seeks revival of its Texas Prompt Pay Statute claims.

### A.  Choice of Law

In a footnote, AERT suggests that the district court erred in applying Arkansas law rather than Texas law to its claims. AERT first asserts that Texas

No. 09-11075

law should apply "[f]or the reasons briefed to the district court." We do not consider arguments on appeal by incorporation. *Turner v. Quarterman*, 481 F.3d 292, 295 n.1 (5th Cir. 2007); *Summers v. Dretke*, 431 F.3d 861, 881 n.12 (5th Cir. 2005).

In addition to its "incorporation" argument, AERT argues in the footnote that AISLIC underwrote the policies in Dallas and that AERT defended the policies with Dallas counsel. AERT cites to two cases but does not address the relevant choice of law factors in any meaningful way. We conclude that AERT's footnote does not constitute sufficient briefing to preserve the issue on appeal. *See* FED. R. APP. P. 28(a)(9)(A) (requiring appellant's brief to include "appellant's contentions and the reasons for them, with citations to the authorities and parts of the record on which the appellant relies"); *see also Bridas SAPIC v. Gov't of Turkm.*, 345 F.3d 347, 356 n.7 (5th Cir. 2003).[1] We will analyze AERT's remaining contentions under Arkansas law.

B. Duty to Defend

Under Arkansas law, an insurer's duty to defend arises when there is a "possibility" that the injury or damage may fall within the policy coverage. *Murphy Oil USA, Inc. v. Unigard Sec. Ins. Co.*, 61 S.W.3d 807, 813 (Ark. 2001). Generally, the allegations of the complaint determine whether the duty to defend

---

[1] Even if we were to consider the merits of the choice of law argument, we do not find error in the district court's selection of Arkansas law. In this diversity case, we apply the choice of law rules of the forum state, Texas. *Cantu v. Jackson Nat'l Life Ins. Co.*, 579 F.3d 434, 437 (5th Cir. 2009). Under Texas law, where there is no contract designating a choice of law, we are to examine the factors from section 188 of the *Restatement (Second) of Conflict of Laws* to determine which state's law applies. *Sonat Exploration Co. v. Cudd Pressure Control, Inc.*, 271 S.W.3d 228, 231 (Tex. 2008). The five factors to be considered are: (1) the place of contracting, (2) the place of contract negotiation, (3) the place of performance, (4) subject matter location, and (5) the parties' domicile, place of incorporation, and place of business. *Id.* at 233; RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 188(2) (1971). While no state overwhelmingly meets all of these factors, Arkansas, where AERT has its principal place of business, is an appropriate choice particularly in light of the fact that the Umbrella Policies were tailored to Arkansas law, thus showing that the parties anticipated that Arkansas law would apply.

is triggered, and a court should resolve any doubt in favor of the insured. *Id.* at 812, 814.

"[O]nce the insured establishes a prima facie case for recovery under the insurance policies, the burden shifts to the insurer to prove that the damages claimed were not covered under the policy." *Farm Bureau Mut. Ins. Co. of Ark., Inc. v. Foote*, 14 S.W.3d 512, 517 (Ark. 2000). "[W]here terms of the policy are clear and unambiguous, the policy language controls, and absent statutory strictures to the contrary, exclusionary clauses are generally enforced according to their terms." *Essex Ins. Co. v. Holder*, 261 S.W.3d 456, 458 (Ark. 2007). We construe insurance policy language "in its plain, ordinary, and popular sense" and will only resort to the rules of construction if the language is ambiguous. *McGrew v. Farm Bureau Mut. Ins. Co. of Ark.*, 268 S.W.3d 890, 894–95 (Ark. 2007).

The parties disagree about whether the events alleged in the Mold Lawsuits constitute an "occurrence" under the Umbrella Policies. If the events alleged in the Mold Lawsuits were an "occurrence," they dispute whether any exclusions apply. We conclude that we need not reach the question of the exclusions[2] because AERT has failed to establish that the Mold Lawsuits allege an "occurrence" under the Umbrella Policies.

Whatever the merits of AERT's arguments would be if we were writing on a blank slate, we are not. The Arkansas Supreme Court has addressed this issue squarely, and we are bound by its determinations of Arkansas law. The Umbrella Policies define "occurrence" as "an accident, including continuous or

---

[2]    AERT contends that Coverage B applies to property damage "not covered under Coverage A," arguing that this provision broadens the coverage provided. Nonetheless, AERT does not dispute that the duty to defend is triggered only if there is "property damage" caused by an "occurrence." We conclude that the Mold Lawsuits did not so allege an occurrence. Accordingly, we need not reach the question of whether Coverage B is subject to the exclusions upon which AISLIC also relied.

repeated exposure to substantially the same generally harmful conditions." In *Essex*, that court was faced with a definition of "occurrence" very similar to the one here, and the court held that "accident" is unambiguous under Arkansas law. 261 S.W.3d at 460. "Accident" means "an event that takes place without one's foresight or expectation – an event that proceeds from an unknown cause, or is an unusual effect of a known cause, and therefore not expected." *Id*.

*Essex* involved a suit brought against a home builder for breach of contract, breach of an express warranty, breach of implied warranties, and negligence. *Id*. at 457. The court concluded unequivocally that "[f]aulty workmanship is not an accident." *Id*. at 460. AERT seeks to distinguish *Essex* because it involved workmanship rather than product manufacturing,[3] however, it does not explain why that distinction makes a difference. *Essex* stands for the proposition that shoddy work (whether in manufacturing a product or working at a construction site) which then fails without collateral damage to a person or other property is not an "accident" from the standpoint of the insured. In this case, the only damages AERT's customers alleged were to AERT's products. We hold that the events alleged in the Mold Lawsuits were not "accidents" under the Umbrella Policies.

We conclude that the Mold Lawsuits do not allege an "occurrence" and therefore hold that AISLIC did not have a duty to defend the Mold Lawsuits. For this same reason, AISLIC cannot be liable under the Texas Prompt Pay Act Statute, even if it applies here, for failing to pay for a defense it did not owe.

---

[3] AERT also attempts to distinguish *Essex* based on the fact that a performance bond was implicated in that case. However, whether or not AERT can obtain insurance, indemnity, or a performance bond for its putative warranty and contract obligations for defective products makes no difference to the question of whether the Mold Lawsuits allege an "occurrence."

No. 09-11075

C.  Indemnity

AERT also contends that the district court should not have entered a final judgment because the issue of indemnity was still to be decided.  AERT argues that, even if AISLIC did not owe AERT a duty to defend, AERT might still be entitled to indemnity. A duty to defend is determined based on the "allegations of the complaint," whereas a duty to indemnify depends on "facts established at trial." *Madden v. Cont'l Cas. Co.*, 922 S.W.2d 731, 734 (Ark. Ct. App. 1996).  We need not address whether, in theory, a duty to indemnify can exist under Arkansas law where no duty to defend exists[4] because we conclude that the district court did not reversibly err in this case regardless.

In its original motion for summary judgment and accompanying brief, AISLIC stated several times that it had no "duty to defend or indemnify" AERT, resting its argument as to both duties on the same policy language: no "occurrence" and the applicability of certain exclusions.  At the time AISLIC's motion was filed, AERT had not yet pled a claim for indemnity; nonetheless, it never contended to the district court that AISLIC's motion was premature. AERT never contended to the district court that it lacked notice of the grounds for AISLIC's motion on indemnity.  In its pre-argument briefing to this court, AERT similarly never challenged the district court's ruling on the grounds of no notice or inadequate notice.  Instead, AERT only contended to this court that AISLIC was required to put on "facts" to defeat a claim of indemnity.[5]  Only after

---

[4] For an analysis of the difference between the two concepts and an explanation of one state's view on how a duty to indemnify might logically exist even if the duty to defend were never triggered, see *D.R. Horton - Texas, Ltd. v. Markel International Insurance Co.*, 300 S.W.3d 740, 743–45 (Tex. 2009) (The two duties "enjoy a degree of independence from each other [such that] . . . the existence of one does not necessarily depend on the existence or proof of the other.").

[5] The "issue presented" for this subject was phrased as follows: "Did the district court err in dismissing AERT's claim for indemnity in connection with the Mold Lawsuits without examining any 'facts' outside of the pleadings relied upon to decide AISLIC's duty to defend?"

a discussion of this issue at oral argument did AERT file a supplemental brief arguing that AISLIC's motion did not put AERT on notice that it was seeking summary judgment and asserting that the matter was not ripe for adjudication when filed.

AERT's arguments are unavailing.  First, because AERT has the initial burden of proving coverage, it could not simply sit silent in the face of AISLIC's motion for summary judgment on the issue of indemnity.  Instead, AERT was required to bring forth "facts" showing an occurrence. *See Hunt v. Pyramid Life Ins. Co.*, 732 S.W.2d 167, 169 (Ark. 1987) (en banc) ("It is well settled that the insured . . . has the burden of proving coverage."); *Smith v. Am. Family Life Assurance Co. of Columbus*, 584 F.3d 212, 220 (5th Cir. 2009) ("[The insured] bore the burden of establishing coverage under her policy. . . .  She failed to produce any evidence that she could satisfy this requirement.  Therefore, the district court erred in denying [the insurer's] motion for summary judgment and in granting her cross-motion." (internal citations omitted)).  Second, with respect to ripeness, before the court ruled on AISLIC's motion, the Mold Lawsuits settled, and AERT amended its complaint to seek indemnity for those settlements. Thus, regardless of whether ripeness is evaluated at the time of the filing of the active complaint or at the time of the entry of judgment, the question of indemnity was ripe for decision here.  Finally, AISLIC did request summary judgment on indemnity in several places, thus putting AERT on notice.

Further, even if we were to conclude that AISLIC should have been more specific—and, indeed, even if we were to conclude that AISLIC did not move for summary judgment on indemnity or put AERT on adequate notice—AERT has failed to show harmful error here.  The settlement of the Mold Lawsuits, cited by AERT in its supplemental brief, is a matter of public record and indicates a large class joined in the issue of whether there was a "defect in ChoiceDek decking and railing products . . . result[ing] in fungal, mold, or mildew growth

that causes extensive permanent discoloration." *Pelletz v. Weyerhaeuser Co.*, 255 F.R.D. 537, 539 (W.D. Wash. 2009); *see also Pelletz v. Weyerhauser Co.*, 592 F. Supp. 2d 1322, 1325 (W.D. Wash. 2009). The court's orders regarding the settlement evince no "facts" that are different from those alleged in the Mold Lawsuits, and, indeed, individual variations among the claimants would have been inconsistent with the court's finding of commonality and conclusion that class action treatment was proper. *See Pelletz*, 255 F.R.D. at 540 ("[C]ommonality exists because all Class members allegedly share the same problem: a defect in their ChoiceDek product causing significant recurring molding problems on their decks. Common questions include whether the product is defective, whether Defendants knew or should have known of the defect, and whether Defendants made material misrepresentations in ChoiceDek marketing materials."). AERT has not pointed to any "facts" different from those alleged in the Mold Lawsuit complaints. Thus, a remand for consideration of the "facts" would be an exercise in futility because the district court already had the necessary facts when it decided the indemnity issue. *See Love v. Nat'l Med. Enters.*, 230 F.3d 765, 770–71 (5th Cir. 2000) (finding harmless error where district court granted summary judgment without proper notice on claims first made in amended complaint filed after motion for summary judgment because (1) the non-movant waived any procedural error by failing to object in the district court and (2) the non-movant pointed to no facts showing that summary judgment outcome was erroneous).

## IV. Conclusion

For the foregoing reasons, the judgment of the district court is AFFIRMED.