# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 10-1100

_____

| | | |
|---|---|---|
| Lexicon, Inc., | * | |
| | * | |
| Appellant, | * | |
| | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the Eastern |
| | * | District of Arkansas. |
| ACE American Insurance Company; | * | |
| National Union Fire Insurance | * | |
| Company of Pittsburgh, PA, | * | |
| | * | |
| Appellees. | * | |
| _____ | * | |
| | * | |
| Associated General Contractors of | * | |
| America; Arkansas Chapter of | * | |
| Associated General Contractors of | * | |
| America, | * | |
| | * | |
| Amici on behalf of | * | |
| Appellant. | * | |

_____

Submitted: September 20, 2010
Filed: December 28, 2010
Amended Opinion Filed: February 14, 2011

_____

Before RILEY, Chief Judge, MELLOY and COLLOTON, Circuit Judges.

_____

RILEY, Chief Judge.

Lexicon, Inc. built a battery of silos for Nu-Iron Unlimited in the West Indies. Months after completion, one of the silos collapsed because of faulty welding by Lexicon's subcontractor, Damus Limited. The collapse caused millions of dollars in property damage. Lexicon sued ACE American Insurance Co. and National Union Fire Insurance Company of Pittsburgh, Pennsylvania (collectively, the Insurers), alleging the Insurers are obligated under commercial general liability (CGL) policies to cover the property damage. On cross-motions for summary judgment, the district court dismissed Lexicon's lawsuit. Lexicon appeals. We affirm in part, reverse in part, and remand for further proceedings.

## I.    BACKGROUND[1]

Nu-Iron wanted to relocate its direct reduced iron (DRI) plant in Convent, Louisiana, to Point Lisas, Trinidad, West Indies. Pursuant to a written contract, Lexicon agreed to dismantle, ship, and re-erect the DRI plant. In a separate purchase order, Lexicon promised to fabricate and erect six new silo storage bins at Nu-Iron's Trinidad facility. Lexicon warranted "all goods delivered hereunder will . . . be free from defects in . . . workmanship, including latent defects." Lexicon agreed its warranty "survive[d] inspection, delivery and payment" and promised to reimburse Nu-Iron for "all incidental and consequential damages incurred as a result of . . . defective . . . goods."

Lexicon subcontracted the fabrication and erection of the new silos to Damus. Each silo was 60 feet in diameter, approximately 92 feet tall, and affixed to a concrete pad with 2 foot anchor bolts. Damus completed the project, and Nu-Iron loaded the silos with DRI pellets a/k/a "sponge iron."

---

[1]The parties dispute many of the "facts." We set forth the facts in the light most favorable to Lexicon, without resolving those factual disputes. See infra part II.A. at 3-4.

After months of use, one of the silos collapsed due to Damus's faulty welds. The failure imploded the silo and damaged nearby equipment, including conveyors Nu-Iron used to load and unload DRI. Despite salvage efforts, thousands of tons of DRI were also damaged because, when exposed to the atmosphere, DRI oxidizes and becomes less useful in steelmaking.

Lexicon reimbursed Nu-Iron for its damages caused by Damus's faulty work. Lexicon spent millions of dollars to clean up the site, re-erect the silo, and replace damaged DRI.

At all relevant times, the Insurers provided CGL insurance to Lexicon. Lexicon notified the Insurers of its losses arising out of the silo collapse, but the Insurers refused to reimburse Lexicon. The Insurers asserted many alternate grounds for denying coverage.

Lexicon sued the Insurers for breach of contract and sought a declaration that the Insurers were "obligated to indemnify Lexicon for their respective insured portions of its damages . . . arising out of the property damage at the Nu-Iron facility." The parties filed cross-motions for summary judgment. The district court granted the Insurers' motions, denied Lexicon's motion, and dismissed the lawsuit. Lexicon appeals.

## II. DISCUSSION
### A. Standard of Review

We review the district court's resolution of cross-motions for summary judgment de novo. See Humphries v. Pulaski Cnty. Special Sch. Dist., 580 F.3d 688, 692 (8th Cir. 2009). Summary judgment in favor of the Insurers is appropriate only if, after viewing the evidence in the light most favorable to Lexicon and affording Lexicon all reasonable inferences, there are no genuine issues of material fact and the

Insurers are entitled to judgment as a matter of law.  See Contemporary Indus. Corp. v. Frost, 564 F.3d 981, 984 (8th Cir. 2009); Fed. R. Civ. P. 56(a).

### B.  Analysis

The Insurers' CGL policies each cover property damage resulting from an "occurrence," defined in each policy as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."  The district court held that, under governing Arkansas law, property damage resulting from the faulty work of a subcontractor is not an "occurrence" for purposes of a CGL policy. The district court concluded the Insurers were not obligated to reimburse Lexicon for any property damage caused by Damus's failed welds.

The district court relied on three cases, Essex Ins. Co. v. Holder, 261 S.W.3d 456 (Ark. 2008), Cincinnati Ins. Cos. v. Collier Landholdings, LLC, 614 F. Supp. 2d 960 (W.D. Ark. 2009), and Nabholz Constr. Corp. v. St. Paul Fire & Mar. Ins. Co., 354 F. Supp. 2d 917 (E.D. Ark. 2005).  We focus on Holder, the only precedential case.

In Holder, homeowners sued their homebuilder for damages resulting in part from the faulty work of the homebuilder's subcontractors.  Holder, 261 S.W.3d at 457.  The homebuilder demanded, under the terms of a CGL policy, that its insurer defend the homebuilder and indemnify the homebuilder for any damages.  Id.  The insurer refused and filed an action against the homebuilder in federal district court seeking a declaration that it had no duty to either defend or indemnify.  Id.  That court certified the following question to the Arkansas Supreme Court: "Does defective

construction or workmanship . . . constitute an accident and, therefore, an occurrence within the meaning of [CGL] insurance policies?" Id. at 456.[2]

The Arkansas Supreme Court answered the certified question as follows: "defective workmanship standing alone—resulting in damages only to the work product itself—is not an occurrence under a CGL policy such as the one at issue here." Id. at 460. The Holder court began its analysis with the recognition that an "'accident' is usually defined as 'an event that takes place without one's foresight or expectation—an event that proceeds from an unknown cause, and therefore not expected.'" Id. at 458 (quoting Continental Ins. Co. v. Hodges, 534 S.W.2d 764, 765 (Ark. 1976)). Aligning Arkansas with "the majority of states that have considered [the] issue," id. at 459, 460 n.1, the Arkansas Supreme Court reasoned, "Faulty workmanship is not an accident; instead it is a foreseeable occurrence, and performance bonds exist in the marketplace to insure the contractor against claims for the cost of repair or replacement of faulty work," id. at 460.

The district court read Holder to determine that the faulty work of a subcontractor does not constitute an "occurrence" for purposes of a CGL policy. The district court concluded the CGL policies did not obligate the Insurers to reimburse

---

[2]Lexicon likewise moves to certify the "occurrence" issue presented in this appeal to the Arkansas Supreme Court, but we deny the motion for two reasons. First, Lexicon did not request certification in the district court. See Perkins v. Clark Equip. Co., Melrose Div., 823 F.2d 207, 209-10 (8th Cir. 1987) ("The practice of requesting certification after an adverse judgment has been entered should be discouraged. Otherwise, the initial federal court decision will be nothing but a gamble with certification sought only after an adverse decision."). Second, Lexicon's motion is conditional. Lexicon only seeks certification "in the event the Court determines that Arkansas law may prevent it from reversing and remanding this case to the district court for further proceedings." Lexicon wants to play "heads I win, tails you lose," an unacceptable tactic in seeking certification. Cf. Hooper v. Advance Am., Cash Advance Ctrs. of Mo., Inc., 589 F.3d 917, 922 (8th Cir. 2009).

Lexicon for *any* property damage caused by the silo's collapse—not the silo, the DRI inside the silo, or the nearby equipment. The Insurers defend the district court's broad construction of Holder, opining (1) Damus's faulty welds were foreseeable; (2) foreseeable risks are never an "accident" or "occurrence" for purposes of a CGL policy; and (3) in Arkansas, contractors must purchase performance bonds to hedge against the risk of property damage caused by faulty subcontractor work.

The district court overstated Holder's reasoning and holding. Holder does contain some broad statements about the definition of the term "accident," the foreseeability of faulty workmanship, and the role of CGL policies vis-à-vis performance bonds. However, Holder expressly and solely holds "defective workmanship standing alone—resulting in damages only to the work product itself—is not an occurrence under a CGL policy." Id.; accord Advanced Envtl. Recycling Techs. Inc. v. Am Int'l Specialty Lines Ins. Co., No. 09-11075, 2010 WL 4272729, at *3 (5th Cir. Oct. 22, 2010) (per curiam) (surveying Arkansas law and stating Holder "stands for the proposition that shoddy work . . . which then fails without collateral damage to a person or other property is not an 'accident' from the standpoint of the insured").[3] We do not find Collier Landholdings, 614 F. Supp. 2d

---

[3]We recognize the Insurers read too much into Holder's discussion of the availability of performance bonds in the marketplace. "[W]hether or not [the insured] can obtain . . . a performance bond . . . makes no difference to the question of whether [there is] an 'occurrence.'" Advanced Envtl., 2010 WL 4272729, at *3 n.3. The availability of a performance bond is irrelevant to a CGL contract coverage analysis, even if the insurer could prove such availability. See Lamar Homes, Inc. v. Mid-Continent Cas. Co., 242 S.W.3d 1, 10 (Tex. 2007). "[A]n insured should not have to consult a long line of case law or law review articles and treatises to determine the coverage he or she is purchasing under an insurance policy." Kovach v. Zurich Am. Ins. Co., 587 F.3d 323, 332-33 (6th Cir. 2009) (quotation omitted). Further, a performance bond (1) guarantees adequate completion of a contract upon the contractor's default in completion and sometimes in workmanship; (2) benefits the project owner, not necessarily the contractor; and (3) permits indemnification by the

at 966-68, persuasive where it cites no apposite legal authority or sound reasoning for interpreting <u>Holder</u>'s definition of an "occurrence" to exclude damages beyond "the work product itself."

Properly understood, <u>Holder</u> justifies the Insurers' decisions to deny Lexicon's claims of coverage for damage to "the work product itself"—the silo.[4] In this respect, we affirm the district court's judgment. <u>See</u> <u>Holder</u>, 261 S.W.3d at 460. The rest we reverse. Absent some applicable exclusion in the policies or other defense, the Insurers are obligated to reimburse Lexicon for all property damage other than to the silo itself, including the lost DRI and damage to the nearby equipment. <u>See</u> <u>id.</u> Under Arkansas law, it was foreseeable that faulty subcontractor work would damage the silo, but not foreseeable that faulty subcontractor work would cause millions of dollars in collateral damage. <u>See</u> <u>Advanced Envtl.</u>, 2010 WL 4272729, at *3.[5]

This division of coverage is consistent with the "Your Work Exclusion" in each CGL policy. <u>See</u> <u>Smith v. So. Farm Bureau Cas. Ins. Co.</u>, 114 S.W.3d 205, 207 (Ark.

---

surety against the contractor and potentially the contractor's CGL insurer. <u>See</u> <u>U.S. Fire Ins. Co. v. J.S.U.B., Inc.</u>, 979 So. 2d 871, 887-88 (Fla. 2007). While a performance bond and a CGL policy may have similarities and may overlap in some events, they are different products with different language and are not the same by origin, purpose, pricing, or application.

[4]Lexicon says "the work product itself" was Damus's faulty welds, not the silo. We disagree. The purchase order and subcontract required Damus to build the entire silo, and the welds were part of Damus's work product. The welds were merely a component of Damus's work product. Because it is not clear whether Lexicon seeks monetary relief based on damages to the adjacent silos, we need not decide whether "the work product itself" includes the other five silos.

[5]Lexicon attempts to distinguish <u>Holder</u> on the ground that the silo's collapse was more "catastrophic" than the "pedestrian" faulty workmanship in <u>Holder</u>. We discern no basis upon which to draw such a distinction.

2003) ("[D]ifferent clauses of a contract must be read together and . . . the contract should be construed so that all parts harmonize."). The exclusion disclaims coverage for property damage incurred as a result of "[w]ork or operations performed by [Lexicon] or on [Lexicon's] behalf" and "[m]aterials, parts, or equipment furnished in connection with such work or operations." But each policy also contains an exception to the your work exclusion, preserving coverage for "damaged work or the work out of which the damage arises" that is "performed on [Lexicon's] behalf by a subcontractor." This subcontractor exception to the your work exclusion in each policy affords coverage for certain property damage resulting from faulty subcontractor work. This interpretation, which we predict the Arkansas Supreme Court would adopt, harmonizes all of the related language in the CGL policies.[6]

## C. Remand

The district court correctly held the Insurers are not obligated to reimburse Lexicon for its reconstruction of the silo. We reverse and remand the balance of the district court judgment. The Insurers press several alternate grounds for affirming the remainder of the district court's judgment, but we express no view now as to their

---

[6]Citing treatises and cases from other jurisdictions, and pointing out the CGL policy at issue in Holder apparently did not contain a your work exclusion, Lexicon and amici curiae argue the subcontractor exception is evidence the term "occurrence" in the Insurers' policies should be construed to include property damage to the work product itself. See, e.g., Stanley Martin Cos. v. Ohio Cas. Group, 313 F. App'x 609, 613 n.2 (4th Cir. 2009) (unpublished per curiam); Am. Fam. Mut. Ins. Co. v. Am. Girl, Inc., 673 N.W.2d 65, 83-84 (Wis. 2004). But we must apply Arkansas law. See Erie R.R. Co. v. Tompkins, 304 U.S. 64, 78 (1938). Holder stands for the proposition that defective workmanship, resulting in damages to the work product itself, is not an occurrence. See Holder, 261 S.W.3d at 460. Nabholz, which Holder cited with approval, dismissed an argument similar to Lexicon's for the reason that "[a]n exception to an exclusion cannot create or extend coverage where none exists under the terms [of] the policy's basic insuring agreement." Nabholz, 354 F. Supp. 2d at 923.

merit, absent the district court first ruling on these issues.  <u>See</u>, <u>e.g.</u>, <u>Beckon, Inc. v. AMCO Ins. Co.</u>, 616 F.3d 812, 820 (8th Cir. 2010).

## III.  CONCLUSION

We affirm in part, reverse in part, and remand for further proceedings consistent with this opinion.

_____